# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| ANGELA KAEPPLINGER and<br>BRIAN KAEPPLINGER, | ) ) ) | |
| Plaintiffs, | ) ) | No. 17 C 5847 |
| v. | ) ) | Magistrate Judge Sidney I. Schenkier |
| MICHAEL MICHELOTTI, M.D.,<br>MARK ZARNKE, M.D.,<br>SURGICAL ASSOCIATES OF<br>NORTHERN ILLINOIS, LLC,<br>ROCKFORD MEMORIAL HOSPITAL,<br>and ROCKFORD HEALTH PHYSICIANS, | ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER[1]

Plaintiffs Angela and Brian Kaepplinger have sued defendants Michael Michelotti, M.D.,

Mark Zarnke, M.D., Surgical Associates of Northern Illinois, LLC ("SANI"), Rockford Memorial

Hospital ("Rockford Hospital"), and Rockford Health Physicians ("Rockford Physicians") (doc. #

130: Second Am. Compl.).[2] Ms. Kaepplinger brings claims of medical negligence against Dr.

Michelotti, Dr. Zarnke, SANI, and Rockford Physicians, and she brings claims of medical and

nursing negligence against Rockford Hospital (*Id.*, Counts I, III-VII). Mr. Kaepplinger brings

claims for loss of consortium against all defendants (*Id.*, Counts VIII, X-XIII).

Rockford Hospital and Rockford Physicians (collectively, the "Rockford defendants")

have filed a motion for partial summary judgment, seeking a finding that there is no actual or

---

[1] On November 13, 2017, by consent of the parties and pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, this case was assigned to the Court for all proceedings, including entry of final judgment (doc. # 76).

[2] On March 15, 2019, another defendant, Michael McCarthy, D.O., was dismissed from the case without prejudice pursuant to the parties' stipulation (doc. # 140).

apparent agency relationship between them and either Dr. Michelotti or Dr. Zarnke (doc. # 144). The motion is now fully briefed. For the reasons set forth below, we grant in part and deny in part the Rockford defendants' motion.

## I.

A party may seek partial summary judgment as to a claim or defense. *See Hotel 71 Mezz Lender LLC v. Nat'l Ret. Fund*, 778 F.3d 593, 606 (7th Cir. 2015). Summary judgment on a claim is appropriate where the moving party establishes "that there is no genuine dispute as to any material fact" and it "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A genuine factual dispute exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where a nonmoving party "bears the ultimate burden of persuasion on a particular issue," the moving party discharges its initial burden on summary judgment by pointing out the lack of evidence supporting the nonmoving party's case. *Modrowski v. Pigatto*, 712 F.3d 1166, 1168 (7th Cir. 2013). If the moving party does so, the nonmoving party must then "go beyond the pleadings (*e.g.*, produce affidavits, depositions, answers to interrogatories or admissions on file), to demonstrate that there is evidence upon which a jury could properly proceed to find a verdict in [its] favor." *Id.* at 1168-69 (internal citations and quotations omitted).

In deciding a motion for summary judgment, "we must view the facts and make all reasonable inferences that favor them in the light most favorable to the party opposing summary judgment." *Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 893 (7th Cir. 2018). We do not "assess the credibility of witnesses, choose between competing reasonable inferences, or

balance the relative weight of conflicting evidence." *Stokes v. Bd. of Educ. of Chi.*, 599 F.3d 617, 619 (7th Cir. 2010).

A court will deny summary judgment if the opposing party submits admissible evidence that creates a genuine dispute of material fact for trial. *See Johnson*, 892 F.3d at 893-94; *Luster v. Ill. Dept. of Corrections*, 652 F.3d 726, 731 (7th Cir. 2011). That standard does not change even if the only evidence submitted on a fact is the "self-serving" testimony of the opposing party in affidavits or depositions. *See Johnson*, 892 F.3d at 901; *see also Widmar v. Sun Chem. Corp.*, 772 F.3d 457, 459-60 (7th Cir. 2014) ("[s]elf-serving affidavits can indeed be a legitimate method of introducing facts on summary judgment"). "[A] district court may consider any evidence that would be admissible at trial. The evidence need not be admissible in form, but must be admissible in content, such that, for instance, affidavits may be considered if the substitution of oral testimony for the affidavit statements would make the evidence admissible at trial." *Wheatley v. Factory Card & Party Outlet*, 826 F.3d 412, 420 (7th Cir. 2016) (internal citations omitted); *see also* Fed. R. Civ. P. 56(c)(4) ("[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated").

That said, we must be mindful that "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. "[M]ere speculation or conjecture" is also insufficient to defeat a summary judgment motion. *Sybron Transition Corp. v. Sec. Ins. Co. of Hartford*, 107 F.3d 1250, 1255 (7th Cir. 1997). Likewise, a "mere scintilla of evidence" is insufficient—on its own—to prove a genuine issue of material fact. *Nat'l Inspection & Repairs, Inc. v. George S. May Int'l Co.*, 600 F.3d 878, 882 (7th

Cir. 2010). As the Seventh Circuit has admonished, summary judgment is the "put up or shut up" stage in litigation, *Johnson v. Cambridge Industries, Inc.*, 325 F.3d 892, 901 (7th Cir. 2003), when a party opposing summary judgment must "wheel out all its artillery" to show there is a viable case that should proceed to trial. *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1270 (7th Cir. 1996).

## II.

In support of their motion for summary judgment, the Rockford defendants submitted a Local Rule 56.1(a)(3) statement of material facts (doc. # 146: Defs.' Statement of Facts ("DSOF")). Plaintiffs responded to the Rockford defendants' statement of material facts (doc. # 170, at 3-12: Pls.' Resp. to DSOF) and filed a Local Rule 56.1(b)(3)(C) statement of additional facts (doc. # 170, at 12-17: Pls.' Statement of Facts ("PSOF")). The Rockford defendants have responded to plaintiffs' statement of additional facts (doc. # 175: Defs.' Resp. to PSOF).[3] The following facts are undisputed unless otherwise indicated.

The Kaepplingers are residents of St. John, Indiana (Pls.' Resp. to DSOF ¶ 1). They allege that they were married prior to the medical care at issue in this lawsuit (Second Am. Compl. ¶¶ 136, 140).[4] Ms. Kaepplinger is a high school graduate who has three associate degrees from Elgin Community College in arts, science, and applied science (Pls.' Resp. to DSOF ¶ 42). She has been a licensed registered nurse in Illinois since 2004 (*Id.*, ¶ 43).

Rockford Hospital provided health care services in Rockford, Illinois (Pls.' Resp. to DSOF ¶ 2). Rockford Physicians offered health care services in Rockford, Illinois, as did SANI, which

---

[3] After initially responding to the Rockford defendants' summary judgment motion, plaintiffs presented an oral motion to file an amended memorandum and Local Rule 56.1 statement, which we granted (*see* docs. ## 158, 160, 167). Thus, we consider plaintiffs' amended filings and the Rockford defendants' responses to these filings.

[4] The Rockford defendants deny these allegations (doc. # 132: Rockford Defs.' Answer to Second Am. Compl. ¶¶ 136, 140), but we refer to them merely to give context to the alleged relationship between plaintiffs. The dispute is not material to our ruling.

was a general surgery practice (*Id.*, ¶¶ 3, 4). Drs. Zarnke and Michelotti are physicians licensed by Illinois as general surgeons (*Id.*, ¶¶ 5, 7). In 1990, Dr. Zarnke formed SANI with two other general surgeons (*Id.*, ¶ 15). Dr. Michelotti joined and became an equal owner of SANI in 2008 (*Id.*, ¶ 17).

Dr. Zarnke and Dr. Michelotti were not employed by Rockford Physicians, and neither doctor would have told a patient that he was so employed (Pls.' Resp. to DSOF ¶¶ 20, 22, 25, 27).[5] Similarly, Dr. Zarnke and Dr. Michelotti were not employed by Rockford Hospital, and neither doctor would have told a patient that he was so employed (*Id.*). Nonetheless, Dr. Zarnke and Dr. Michelotti both had privileges to perform surgery at Rockford Hospital in 2015 (*Id.*, ¶¶ 19, 24). Rockford Hospital provided Drs. Zarnke and Michelotti with a space to work with nursing staff, but did not control the way in which these doctors treated the patients they saw at the hospital (*Id.*, ¶¶ 23, 28).

On July 28, 2007, Ms. Kaepplinger was treated at Rockford Hospital (Pls.' Resp. to DSOF ¶ 30). At this time, she signed a two-page document titled "CONSENT FOR TREATMENT/ASSIGNMENT OF BENEFITS/RECEIPT OF JOINT PRIVACY NOTICE" (*Id.*; DSOF Ex. D: A. Kaepplinger Dep., Ex. 2). This consent form included, in a section titled "CONSENT FOR MEDICAL TREATMENT," the following language:

> I understand the physicians and their assistants who work with RHS [Rockford Health System] may or may not be employees or agents of RHS. Many are independent practitioners who are permitted to use the facilities for the care and treatment of their patients. These practitioners may include my attending physician, a consulting physician and any practitioners associated with radiology and pathology services. I understand I may receive separate bills from these physicians and their assistants, and that they may not participate in the same insurance contracts as RHS. I may have a greater financial responsibility for services provided by physicians and providers not under contract with my health care plan.

---

[5] The parties have provided no further evidence, information, or explanation regarding the doctors' relationship, if any, to Rockford Physicians.

(A. Kaepplinger Dep., Ex. 2, at 1). Ms. Kaepplinger does not remember whether she read the July 2007 consent form before signing it (Defs.' Resp. to PSOF ¶ 8).

On August 12, 2015, Ms. Kaepplinger presented to an urgent care facility in Rockford, Illinois, complaining of left upper quadrant pain that had become worse after eating (Pls.' Resp. to DSOF ¶ 31). The urgent care physician examined Ms. Kaepplinger and advised her to go to the Emergency Department at Rockford Hospital to obtain a CT scan (*Id.*, ¶ 32). When Ms. Kaepplinger called Mr. Kaepplinger to tell him about the urgent care visit, Mr. Kaepplinger similarly directed her "to go to Rockford Memorial right now and get a CT scan" (*Id.*, ¶ 33). At 6:51 p.m. the same day, Ms. Kaepplinger presented to Rockford Hospital's Emergency Department (*Id.*, ¶ 34). Ms. Kaepplinger went to Rockford Hospital (as opposed to another hospital) because she delivered her son there and she thought it was a good hospital (A. Kaepplinger Dep. at 223:23-224:4).

At 8:41 p.m. on August 12, 2015, a patient signed a two-page document titled "Consent for Treatment/Assignment of Benefits/Receipt of Joint Privacy Notice – Episodic," with the subtitle "(ADMISSIONS AND INTENSIVE OUTPATIENT SERVICES)" (DSOF Ex. G). This consent form identifies Ms. Kaepplinger in the top right corner of the first page (*Id.* at 1). On the same page, in a section titled "CONSENT FOR MEDICAL TREATMENT," was the following language:

> I understand the physicians and their assistants who work with RHS [Rockford Health System] may or may not be employees or agents of RHS. Many are independent practitioners who choose to use Rockford Memorial Hospital or RHS for the care and treatment of their patients. These practitioners may include my attending physician, a consulting physician and includes all practitioners associated with radiology and pathology services. I understand I may receive separate bills from these physicians and their assistants, and that they may not participate in the same insurance contracts as RHS. I may have a greater financial responsibility for services provided by physicians and providers not under contract with my health care plan.

(*Id.*). The August 2015 consent form also included, on the second page, the statement that "I acknowledge that I have read this document (or a large print version) and have had the opportunity to ask questions," followed by a line for the patient's signature (*Id.* at 2; Defs.' Resp. to PSOF ¶ 31). Ms. Kaepplinger does not recall reviewing a document like the August 2015 consent form (Defs.' Resp. to PSOF ¶ 10; A. Kaepplinger Dep. at 210:3-15). The parties dispute whether the signature on the August 2015 consent form is Ms. Kaepplinger's signature (Pls.' Resp. to DSOF ¶ 35).

Nonetheless, it is undisputed that at approximately 1:19 a.m. on August 13, 2015, Ms. Kaepplinger was admitted to Rockford Hospital and was transferred to the medical telemetry floor for treatment of her abdominal complaints (Pls.' Resp. to DSOF ¶ 36). Upon Ms. Kaepplinger's admission, a Rockford Hospital employee, Dr. Olin, ordered an in-patient consultation from SANI (Defs.' Resp. to PSOF ¶ 2; DSOF Ex. B: Zarnke Dep. at 52:18-53:19). Dr. Zarnke was the on-call surgeon for SANI at the time Dr. Olin ordered the consultation (Defs.' Resp. to PSOF ¶ 2; Zarnke Dep. at 52:18-53:22). At approximately 1:17 p.m. on August 13, 2015, Dr. Zarnke provided his first surgical consultation to Ms. Kaepplinger (Pls.' Resp. to DSOF ¶ 37). Later that day, Dr. Zarnke operated on Ms. Kaepplinger (PSOF Ex. 5, at 11-13).

On the evening of August 14, 2015, Dr. Michelotti provided his first surgical consultation to Ms. Kaepplinger (Pls.' Resp. to DSOF ¶ 38). Dr. Michelotti became involved with Ms. Kaepplinger's care at this time because Dr. Zarnke was out of town and he (Dr. Michelotti) was the on-call surgeon for SANI (Defs.' Resp. to PSOF ¶ 4; DSOF Ex. C: Michelotti Dep. at 42:24-43:20, 44:3-13). Dr. Michelotti thereafter operated on Ms. Kaepplinger on August 16, August 18, and August 24, 2015 (PSOF Ex. 5, at 2-4, 7-11).[6] Before her admission, Ms. Kaepplinger had

---

[6] Dr. McCarthy, who is no longer a defendant in this case, operated on Ms. Kaepplinger as well, doing so on August 20 and 22, 2015 (PSOF Ex. 5, at 4-7).

never met or heard of either Dr. Zarnke or Dr. Michelotti, and during her stay, Ms. Kaepplinger was not given a choice as to who would treat her (Defs.' Resp. to PSOF ¶¶ 1, 18). Ms. Kaepplinger was discharged from Rockford Hospital on August 29, 2015 (Pls.' Resp. to DSOF ¶ 40).

Ms. Kaepplinger testified that Drs. Zarnke and Michelotti "did not go out of their way to tell [her] that they were not" employees of Rockford Hospital (Defs.' Resp. to PSOF ¶ 29). Dr. Zarnke does not recall telling Ms. Kaepplinger that he was an independent contractor or that he was not an employee or agent of Rockford Hospital (*Id.*, ¶ 3). Nor does Dr. Michelotti think he discussed with Ms. Kaepplinger the fact that he was not an employee of Rockford Hospital (*Id.*, ¶ 5). And Ms. Kaepplinger does not think she asked any of the physicians at Rockford Hospital whether they were employed by the hospital (*Id.*, ¶ 6).

In any event, Ms. Kaepplinger understood and believed that Drs. Zarnke and Michelotti were employees of Rockford Hospital (Defs.' Resp. to PSOF ¶ 15), even though she knew that hospital employees were not part of Dr. Zarnke's and Dr. Michelotti's surgical team (A. Kaepplinger Dep. at 216:18-217:6). While working as a nurse at another hospital, Ms. Kaepplinger likewise believed the physicians she was associated with were employees of the hospital (Defs.' Resp. to PSOF ¶ 14). Moreover, Mr. Kaepplinger observed framed photographs of Drs. Zarnke and Michelotti in the hallway of Rockford Hospital (*Id.*, ¶ 19).

It is undisputed that, while treating Ms. Kaepplinger, both Dr. Zarnke and Dr. Michelotti wore badges indicating they were independent physicians (Zarnke Dep. at 138:9-18; Michelotti Dep. at 42:2-9).[7] However, neither Dr. Zarnke nor Dr. Michelotti produced their own badges in

---

[7] Plaintiffs attempt to dispute this fact on the bases that (1) Ms. Kaepplinger does not recall Drs. Zarnke and Michelotti wearing badges that identified themselves as independent physicians and (2) Mr. Kaepplinger does not remember either doctor wearing a badge at all (Pls.' Resp. to DSOF ¶¶ 21, 26). But "[a] witness's inability to recall something will not create a fact issue in the face of affirmative evidence of the fact." *G&G Closed Circuit Events, LLC v. Castillo*, No. 14-CV-02073, 2017 WL 1079241, at *7 n.2 (N.D. Ill. Mar. 22, 2017); *see also Hemphill v. State Farm Mut. Auto Ins. Co.*, 805 F.3d 535, 541 (5th Cir. 2015) ("Lack of memory by itself is insufficient to create a genuine dispute of fact"). Given the doctors' deposition testimony, plaintiffs' lack of recollection does not create a

discovery bearing the phrase "independent physician" (Defs.' Resp. to PSOF ¶ 33), and neither doctor offered any evidence as to the prominence of the badges they wore. Dr. Michelotti, moreover, testified that he thought his badge included Rockford Hospital's name as well, and Ms. Kaepplinger testified that she believed the badges of Drs. Zarnke and Michelotti said Rockford Hospital (Michelotti Dep. at 42:3-17; A. Kaepplinger Dep. at 216:5-14).

The parties dispute whether Dr. Michelotti wore a jacket bearing Rockford Hospital's insignia: Ms. Kaepplinger testified that he did so, whereas Dr. Michelotti testified that he does not wear a doctor's coat (Defs.' Resp. to PSOF ¶ 13; A. Kaepplinger Dep. at 215:21-216:8; Michelotti Dep. at 41:21-42:2). It is undisputed, however, that Dr. Zarnke wore a jacket with Rockford Hospital's insignia (Defs.' Resp. to PSOF ¶ 13).

SANI billed Ms. Kaepplinger directly for its services (Zarnke Dep. at 43:24-44:3). SANI billed $463.00 to Ms. Kaepplinger for services on August 13, 2015; $507.00 for services on August 20, 2015; and $295.00 for services also on August 20, 2015 (PSOF Ex. 1: A. Kaepplinger Aff. ¶ 3; PSOF Ex. 4, at 6, 9). Ms. Kaepplinger did not receive these bills until after Drs. Zarnke and Michelotti had treated her (Defs.' Resp. to PSOF ¶ 20). Ms. Kaepplinger also received separate bills from Rockford Hospital and Rockford Physicians in relation to her August 2015 stay at Rockford Hospital (PSOF Ex. 4, at 4-7, 9-11).

### III.

Plaintiffs allege that Ms. Kaepplinger developed an anastomotic leak and sepsis due to the medical negligence of Drs. Zarnke and Michelotti, and that the Rockford defendants are liable for

---

genuine factual dispute on this issue. *See Tinder v. Pinkerton Sec.*, 305 F.3d 728, 735-36 (7th Cir. 2002) (finding that the plaintiff's assertion that she did not remember receiving or seeing a brochure did not raise a genuine issue as to whether the brochure was distributed to her in light of two uncontroverted affidavits indicating that the brochure was sent and presumably received).

these doctors' negligent actions (Pls.' Resp. to DSOF ¶¶ 11-14; Defs.' Resp. to PSOF ¶¶ 27, 28).[8]

Under Illinois law, a principal may be liable for the medical negligence of (1) its actual agents or (2) its apparent agents. *See Wilson v. Edward Hosp.*, 981 N.E.2d 971, 978 (Ill. 2012); *Gilbert v. Sycamore Mun. Hosp.*, 622 N.E.2d 788, 792 (Ill. 1993) (explaining that a hospital may be liable in a medical malpractice case "based upon a principal-agent relationship between the hospital and the physician").[9] Although the existence of an agency relationship is generally a question of fact, "a court may decide this issue as a matter of law if only one conclusion may be drawn from the undisputed facts." *Churkey v. Rustia*, 768 N.E.2d 842, 845 (Ill. App. Ct. 2002); *accord Clarendon Nat. Ins. Co. v. Medina*, 645 F.3d 928, 935 (7th Cir. 2011). Plaintiffs bear the burden of establishing an agency relationship. *Pyskaty v. Oyama*, 641 N.E.2d 552, 569 (Ill. App. Ct. 1994). But on summary judgment, it is the Rockford defendants who must show that there is no triable issue on that question. *See Modrowski*, 712 F.3d at 1168; *Winter v. Minn. Mut. Life Ins. Co.*, 199 F.3d 399, 408 (7th Cir. 1999).

The Rockford defendants argue that Drs. Zarnke and Michelotti are neither their actual nor their apparent agents. We address each theory of agency in turn.

## IV.

The Rockford defendants first contend that plaintiffs have failed to establish an actual agency relationship between them and Drs. Zarnke and Michelotti (doc. # 145: Defs.' Summ. J. Mem., at 3-6). Plaintiffs have abandoned any claim that Drs. Zarnke and Michelotti were actual

---

[8] Plaintiffs also allege that both Rockford defendants are liable for the negligence of another doctor, Dr. Ehtesham (Pls.' Resp. to DSOF ¶ 11). Dr. Ehtesham's relationship to the Rockford defendants is not at issue in this motion, and we do not make any ruling regarding the Rockford defendants' alleged liability for Dr. Ehtesham's actions.

[9] We apply Illinois law because the parties agree that our subject matter jurisdiction is based on diversity of citizenship (Pls.' Resp. to DSOF ¶ 9) and because the parties rely upon Illinois law for their summary judgment arguments. *See Davis v. G.N. Mortg. Corp.*, 396 F.3d 869, 876 (7th Cir. 2005); *Wood v. Mid-Valley Inc.*, 942 F.2d 425, 426 (7th Cir. 1991).

agents of Rockford Hospital or Rockford Physicians, by failing to respond to the Rockford defendants' summary judgment argument and instead affirmatively stating that their claims against the Rockford defendants for the actions of Drs. Zarnke and Michelotti "are based on a theory of apparent agency and not actual agency" (doc. # 172: Pls.' Resp. Mem., at 2 n.1). Thus, we grant summary judgment in the Rockford defendants' favor on this issue. *See Walker v. Mueller Indus., Inc.*, 408 F.3d 328, 331 (7th Cir. 2005) (party forfeited an argument that he failed to make in opposing summary judgment); *Kirsch v. Brightstar Corp.*, 78 F. Supp. 3d 676, 711-12 (N.D. Ill. 2015) (entering summary judgment in favor of the defendant on a claim where the plaintiff failed to defend the claim and respond to the defendant's summary judgment argument).

## V.

The Rockford defendants next contend that plaintiffs have failed to establish that Drs. Zarnke and Michelotti were their apparent agents (Defs.' Summ. J. Mem., at 6-9). Where a physician is an independent contractor, and not the actual agent or employee of a principal, the principal may still be held vicariously liable for the physician's negligent acts under the doctrine of apparent authority. *See Lamb-Rosenfeldt v. Burke Med. Grp., Ltd.*, 967 N.E.2d 411, 419 (Ill. App. Ct. 2012). To establish vicarious liability under the doctrine of apparent authority, a plaintiff must prove two elements: (1) "holding out" by the principal, *i.e.*, "that the [principal] held itself out as the provider of health care, without informing the patient that the care is given by independent contractors," and (2) "justifiable reliance" by the patient, *i.e.*, "that the patient justifiably relied upon the conduct of the [principal] by looking to the [principal] to provide health care services, rather than to a specific physician." *Petrovich v. Share Health Plan of Ill., Inc.*, 719 N.E.2d 756, 765-66 (Ill. 1999). "Vicarious liability under the apparent authority doctrine will not attach, however, if the patient knew or should have known that the physician providing treatment

is an independent contractor." *Id.* at 766. The gist of the apparent authority doctrine is that "[w]here the principal creates the appearance of authority, the principal will not be heard to deny the agency to the prejudice of an innocent party, who has been led to rely upon the appearance of authority in the agent." *Gilbert*, 622 N.E.2d at 795 (internal quotations omitted).

With this general framework in place, we address whether plaintiffs have shown that "the evidence is such that a reasonable jury could" conclude that Drs. Zarnke and Michelotti were the apparent agents of each Rockford defendant—Rockford Physicians and Rockford Hospital. *See Anderson*, 477 U.S. at 248.

## A.

We first find that Rockford Physicians is entitled to summary judgment on plaintiffs' claim of apparent authority with respect to Drs. Zarnke and Michelotti. In opposing the Rockford defendants' motion for summary judgment, plaintiffs substantively refer to Rockford Physicians only one time, when they suggest (without legal or evidentiary citation) that agents of Rockford Hospital are, "by extension," agents of Rockford Physicians (Pls.' Resp. Mem., at 2). Rockford Hospital and Rockford Physicians, however, are separate defendants in this lawsuit, and plaintiffs do not identify any legal authority that supports treating the apparent agents of one defendant (Rockford Hospital) as the apparent agents of another defendant (Rockford Physicians). Nor do plaintiffs identify any evidence in the record suggesting that the relationship between Rockford Hospital and Rockford Physicians is such that agents of one are, "by extension," agents of the other. *See Berry v. Chi. Transit Auth.*, 618 F.3d 688, 692 (7th Cir. 2010) (assertions unsupported by admissible evidence cannot withstand summary judgment); *Zeidler v. A & W Rests., Inc.*, 301 F.3d 572, 575 (7th Cir. 2002) ("unsupported assertions . . . are not evidence sufficient to defeat a motion for summary judgment"). From the parties' statements of fact, all we know about Rockford

Physicians is that it offered health services in Rockford, Illinois and was incorrectly named and sued in this action as "Rockford Health Physicians d/b/a Mercy Heath Physicians" (Pls.' Resp. to DSOF ¶ 3).

In fact, the only evidence provided by plaintiffs that specifically addresses Rockford Physicians (which the parties refer to as "RHP") is an affidavit submitted by Mr. Kaepplinger in response to the Rockford defendants' summary judgment motion (PSOF Ex. 2: B. Kaepplinger Aff.). Mr. Kaepplinger asserts that during Ms. Kaepplinger's stay at Rockford Hospital in August 2015, he "observed framed photographs within the hospital hallway of [Drs.] Zarnke and Michelotti that reinforced [my] understanding that [Drs.] Zarnke and Michelotti were employees of [Rockford Hospital] *and/or RHP*" (*Id.*, ¶ 3 (emphasis added); *see also* PSOF ¶ 19 (identifying this assertion as an additional statement of fact)).

But Mr. Kaepplinger's affidavit does not set forth any specific facts explaining why he understood Drs. Zarnke and Michelotti to be employees of Rockford Physicians in the first place. Nor does the affidavit provide any specific facts explaining why seeing photographs in the hallway of Rockford Hospital would reinforce such an understanding. Again, Rockford Hospital and Rockford Physicians are separate defendants, and plaintiffs do not identify any evidence indicating that their relationship—to the extent there is one—is such that the actions or knowledge of one reflect the actions or knowledge of the other. Whatever the photographs of Drs. Zarnke and Michelotti in the hospital's hallway may say about the doctors' relationship to Rockford *Hospital*, these photographs say nothing about the doctors' relationship to Rockford *Physicians*. Mr. Kaepplinger's conclusory, unsupported statement about his understanding with respect to Rockford Physicians does not raise a genuine dispute of fact. *See Lucas v. Chi. Transit Auth.*, 367 F.3d 714, 726 (7th Cir. 2004) ("[C]onclusory statements, not grounded in specific facts, are not

sufficient to avoid summary judgment"); *Trimble v. All.-DeKalb/Rock-Tenn Co.*, 801 F. Supp. 2d 764, 769 (N.D. Ill. 2011) ("[I]n an affidavit opposing summary judgment, conclusory allegations, unsupported by specific facts, will not suffice" (internal alteration and quotations omitted)); *Churkey*, 768 N.E.2d at 844-45, 847 (refusing to credit plaintiff's assertion at the summary judgment stage that she believed the anesthesiologist to be an employee of the hospital where the assertion was unsupported by any specific facts). Accordingly, plaintiffs have not shown that a reasonable jury could conclude that Drs. Zarnke and Michelotti were the apparent agents of Rockford Physicians. We grant summary judgment in favor of Rockford Physicians on this issue.

**B.**

Whether Rockford Hospital is entitled to summary judgment on the question of apparent authority, however, requires a more detailed analysis which leads to a different conclusion. The summary judgment record discloses genuine and material factual disputes on both the "holding out" and "justifiable reliance" elements of plaintiffs' apparent authority theory. We address each of these elements in turn.

**1.**

The "holding out" element requires proof that the hospital, or its agent, "acted in a manner that would lead a reasonable person to conclude that the physician who was alleged to be negligent was an agent or employee of the" hospital. *Petrovich*, 719 N.E.2d at 766; *Gilbert*, 622 N.E.2d at 795. This element "is satisfied if the hospital holds itself out as a provider of care without informing the patient that the care is provided by independent contractors." *Yarbrough v. Nw. Mem. Hosp.*, 104 N.E.3d 445, 450 (Ill. 2017) (citing *Gilbert*, 622 N.E.2d at 796). In contrast, "actual or constructive knowledge that the doctor is an independent contractor precludes the 'holding out' element of an apparent agency claim." *Mizyed v. Palos Cmty. Hosp.*, 58 N.E.3d 102, 116 (Ill. App.

14

Ct. 2016) (internal quotations omitted). "Whether a person has notice of a physician's status as an independent contractor, or is put on notice by the circumstances, is a question of fact." *Petrovich*, 719 N.E.2d at 767.

Rockford Hospital offers several arguments as to why Ms. Kaepplinger knew or should have known that Drs. Zarnke and Michelotti were independent physicians, which would preclude her from satisfying the "holding out" element. *See Mizyed*, 58 N.E.3d at 116. We find none of Rockford Hospital's arguments persuasive.

*First*, Rockford Hospital argues that by signing the July 2007 and August 2015 consent forms, Ms. Kaepplinger "knew or should have known of the independent status of the physicians that treated her," including Drs. Zarnke and Michelotti (Defs.' Summ. J. Mem., at 8). "[W]hether a patient signs a hospital consent to treatment form that contains clear and unambiguous independent contractor disclaimer language is an important factor to consider" in evaluating the "holding out" element "because it is unlikely that a patient who signs such a form can reasonably believe that her treating physician is an employee or agent of a hospital when the form contains specific language to the contrary." *Lamb-Rosenfeldt*, 967 N.E.2d at 420. But if the language of a consent form is confusing or ambiguous, a jury may reasonably conclude that the form failed to adequately inform a patient of her doctor's independent contractor status. *See, e.g., Hammer v. Barth*, 48 N.E.3d 769, 777 (Ill. App. Ct. 2016); *Spiegelman v. Victory Mem. Hosp.*, 911 N.E.2d 1022, 1033-34 (Ill. App. Ct. 2009).

Here, the language used in the July 2007 and August 2015 consent forms is too equivocal for us to find, as a matter of law, that these forms sufficiently notified Ms. Kaepplinger of the independent physician status of Drs. Zarnke and Michelotti. Both forms state that the physicians and their assistants "may or may not be" employees or agents of Rockford Health System; that

"[m]any" of the physicians and assistants are independent practitioners; and that these practitioners "may" include the patient's attending physician or a consulting physician (A. Kaepplinger Dep., Ex. 2, at 1; DSOF Ex. G, at 1). The only physicians who are characterized as independent practitioners without exception in either form are "practitioners associated with radiology and pathology services" (DSOF Ex. G, at 1), which Drs. Zarnke and Michelotti are not. Additionally, the July 2007 and August 2015 consent forms state that the patient "may" receive separate bills from the physicians and their assistants (A. Kaepplinger Dep., Ex. 2, at 1; DSOF Ex. G, at 1).

These statements fall short of unequivocally providing notice that Drs. Zarnke and Michelotti were independent contractors; to the contrary, they are akin to language found by courts to be sufficiently ambiguous to warrant denying summary judgment on the "holding out" element. In *Hammer*, the consent forms stated "that '*some or all* of the physicians who provide medical services' at the hospital 'are not employees or agents of the hospital, but rather independent practitioners'" and "that '[n]on-employed physicians *may* include, but are not limited to, those practicing emergency medicine, trauma, cardiology, obstetrics, surgery, radiology, anesthesia, pathology and other specialties.'" 48 N.E.3d at 777 (emphases in original). The *Hammer* court found that this language was ambiguous and did not clearly state that the defendant physician (a cardiologist) was an independent contractor, as "one could assume that some or all or none of the treating physicians [were] independent contractors, and that independent physicians may or may not include cardiologists." *Id.* Accordingly, the court found an issue of material fact as to whether the consent form adequately informed the signer of the defendant's status as an independent physician. *Id.* Similarly, in *Knighten v. United States*, No. 06 C 1318, 2008 WL 5244475 (N.D. Ill. Dec. 16, 2008), the consent form at issue stated that the patient's attending physician "may or may not be an employee of the hospital." *Id.* at *3. The court found that it was not unreasonable

to read this language as failing to clearly identify the patient's doctors as independent contractors and, thus, summary judgment was inappropriate on the "holding out" element. *Id.*

In arguing that the July 2007 and August 2015 consent forms contained "clear and explicit language" foreclosing any reasonable belief that Drs. Zarnke and Michelotti were not independent contractors, Rockford Hospital contends that these consent forms are like the signed consent form in *Frezados v. Ingalls Memorial Hospital*, 991 N.E.2d 817, 822-23 (Ill. App. Ct. 2013), where the court found summary judgment appropriate on the "holding out" element (Defs.' Summ. J. Mem., at 7-8). We disagree. The consent form in *Frezados* stated—without exception—that physicians providing services to the patient "are not employees, agents or apparent agents of [the hospital] but are independent medical practitioners." 991 N.E.2d at 819, 821. In other words, the consent form in *Frezados* clearly and concisely stated what the patient's physicians were (independent contractors) and what they were not (employees, agents, or apparent agents of the hospital). The form also specified that the patient *will* receive a separate bill from each of his treating physicians. *Id.* at 822. Conversely, according to the July 2007 and August 2015 consent forms, Ms. Kaepplinger's consulting physicians may be independent contractors, or they may not be. Likewise, Ms. Kaepplinger may receive a separate bill from her physicians, or she may not. Indeed, in *Hammer*—where the wording of the consent form at issue was much closer to the wording of the July 2007 and August 2015 consent forms—the court distinguished *Frezados* and similar cases "because the forms in those cases contained clear language of the physicians' independent status." 48 N.E.3d at 777.

In short, although the language of a consent form may be so clear and unambiguous to warrant summary judgment on the "holding out" element in some circumstances, that is not the case here. Like the *Hammer* and *Knighten* courts, we find the disclaimer language in the consent

forms at issue, which only alerts a patient to the *possibility* that her physicians are independent contractors, too ambiguous to negate the "holding out" element as a matter of law. Thus, there is a genuine factual dispute as to whether the July 2007 and August 2015 consent forms adequately informed Ms. Kaepplinger about the independent physician status of Drs. Zarnke and Michelotti.[10]

*Second*, Rockford Hospital mentions the fact that Ms. Kaepplinger is a licensed nurse, presumably to support the notion that a licensed nurse should understand that physicians working at a hospital are not employees of the hospital. But such a notion would arguably preclude any nurse, physician, or other medical professional who worked at a hospital from bringing a medical negligence claim based on apparent authority, and Rockford Hospital cites no legal support for such a broad prohibition. *Compare York v. Rush-Presbyterian-St. Luke's Med. Ctr.*, 854 N.E.2d 635, 637-38, 640 (Ill. 2006) (upholding a jury verdict of negligence against a hospital based on apparent authority where the plaintiff was a retired orthopedic surgeon). Moreover, it is undisputed that Ms. Kaepplinger believed that the physicians she associated with as a nurse were employees

---

[10] There are other issues which deprive the consent forms of the conclusive effect on summary judgment that Rockford Hospital seeks. For one thing, Ms. Kaepplinger signed the July 2007 consent form more than *eight years* before her August 2015 stay at Rockford Hospital. A reasonable jury could find that a consent form from 2007 does not put a patient on actual or constructive notice of the employment status of physicians whom she does not meet until several years into the future. A reasonable jury also could conclude that a patient would not assume that a hospital's description of its relationship with physicians in 2007 would necessarily reflect that relationship in 2015, eight years later. What is more, Rockford Hospital fails to cite any legal authority where notice of a physician's independent status has been imputed based on a consent form signed several years before the allegedly negligent treatment.

As for the August 2015 consent form, we note that there are two versions of the consent form in the record. The first version (Version A) was used to question Ms. Kaepplinger at her May 2018 deposition and was marked as deposition exhibit 3 (A. Kaepplinger Dep. at 210:3-15; *id.*, Ex. 3). The second version (Version B) was not produced by the Rockford defendants until February 7, 2019, when they did so as part of supplemental disclosures under Federal Rule of Civil Procedure 26(e) (Defs.' Resp. to PSOF ¶ 12; PSOF Ex. 3, at 7-8; DSOF Ex. G). Both versions appear to be identical, with one exception: Version B contains a date and time stamp ("08/12/2015 08:41 PM") next to the patient's signature, whereas Version A does not. In addition, Ms. Kaepplinger testified that she did not recall reviewing, seeing, or signing Version A or a similar document in connection with her August 2015 treatment at Rockford Hospital, and that the signature on Version A "doesn't look like my signature" (A. Kaepplinger Dep. at 186:19-21, 210:3-15, 236:1-4). These foundational issues are ones to be sorted out at trial, not on summary judgment. *See White v. Richert*, No. 15 C 8185, 2018 WL 4101512, at *8 (N.D. Ill. Aug. 28, 2018) (the resolution of fact questions concerning which version of a trust document was authentic and governing were "for a jury at trial and not a court on summary judgment").

of the hospital where she worked (Defs.' Resp. to PSOF ¶ 14). *Cf. York*, 854 N.E.2d at 662-63 (finding that a jury could infer that the plaintiff reasonably believed that the negligent anesthesiologist was the hospital's employee, even though the plaintiff himself had been a surgeon who had worked as an independent contractor where, among other things, the plaintiff testified that he was unaware of the employment status of the anesthesiologists with whom he had worked).

*Third*, Rockford Hospital contends that Drs. Zarnke and Michelotti wore badges indicating they were "independent physicians." Although this fact is not in genuine dispute, Ms. Kaepplinger does not recall seeing Drs. Zarnke and Michelotti wearing badges saying "Independent Physician" (Defs.' Resp. to PSOF ¶ 17) -- and there is no evidence as to the prominence of the badges the doctors wore. Furthermore, Dr. Michelotti testified that he thought his badge *also* identified Rockford Hospital, and Ms. Kaepplinger testified that she believed the badges of Drs. Zarnke and Michelotti said Rockford Hospital (Michelotti Dep. at 42:3-17; A. Kaepplinger Dep. at 216:5-14). It is also undisputed that Dr. Zarnke wore a jacket bearing Rockford Hospital's insignia (Defs.' Resp. to PSOF ¶ 13). In addition, Ms. Kaepplinger testified that Dr. Michelotti wore such a jacket, and the jury could believe her testimony over Dr. Michelotti's testimony that he does not wear a doctor's coat (*Id.*; *compare* A. Kaepplinger Dep. at 215:21-216:8, *with* Michelotti Dep. at 41:21-42:2). On this record, we cannot say as a matter of law that a patient would (or should) have focused solely on the "independent" aspect of the doctors' attire to the exclusion of the apparent connection to the hospital. Thus, a genuine factual dispute exists. *See York v. El-Ganzouri*, 817 N.E.2d 1179, 1204 (Ill. App. Ct. 2004), *aff'd sub nom. York v. Rush-Presbyterian-St. Luke's Med. Ctr.*, 854 N.E.2d 635 (Ill. 2006) (characterizing the fact that the defendant doctor wore a lab coat and/or scrubs with the hospital's name and logo on them as evidence that the doctor "was cloaked with authority by the hospital").

*Fourth*, Rockford Hospital points out that Drs. Zarnke and Michelotti never told Ms. Kaepplinger they were its employees. But the "holding out" element does not require an "express representation" that the allegedly negligent physician is the hospital's employee. *Gilbert*, 622 N.E.2d at 796; *see also Kane v. Doctors Hosp.*, 706 N.E.2d 71, 75 (Ill. App. Ct. 1999) (mere silence by a hospital as to a doctor's employment status "is sufficient for liability to attach"). And, on the other side of the ledger, there also is no evidence that Drs. Zarnke and Michelotti said anything to affirmatively dispel Ms. Kaepplinger's undisputed belief that they *were* employees of the hospital. (*See* Defs.' Resp. to PSOF ¶ 15).

*Fifth*, Rockford Hospital contends that Ms. Kaepplinger was able to distinguish hospital employees from Drs. Zarnke and Michelotti. The deposition testimony cited to support this contention, however, merely shows that Ms. Kaepplinger knew that certain hospital employees were not part of the surgical team formed by Drs. Zarnke and Michelotti (A. Kaepplinger Dep. at 216:18-217:6). Knowing this is a far cry from knowing that the surgeons on that team are non-employee, independent physicians.

*Sixth*, Rockford Hospital highlights the fact that SANI billed Ms. Kaepplinger for the services provided by Drs. Zarnke and Michelotti. But Ms. Kaepplinger did not receive these bills until after the doctors' services were rendered (Defs.' Resp. to PSOF ¶ 20), so they do not bear on what Ms. Kaepplinger knew or should have known at the time she was treated by Drs. Zarnke and Michelotti. *See Kane*, 706 N.E.2d at 75 (framing the issue as whether the patient was aware that a doctor was an independent physician *at the time* the patient underwent a CT scan and finding that bills issued after the CT scan did "not demonstrate the extent of [the patient's] knowledge at the time the services were rendered"). Also, SANI only billed Ms. Kaepplinger a total of $1,265.00 for six surgical procedures (A. Kaepplinger Aff. ¶ 3; PSOF Ex. 4, at 6, 9; PSOF Ex. 5, at 2-13). It

is not unreasonable to infer that multiple operations would cost well over $1,265.00 and that portions of this cost must be captured in other bills from, for example, Rockford Hospital. Furthermore, SANI's bills do not line up with the services provided by Drs. Zarnke and Michelotti. Even though these doctors operated on Ms. Kaepplinger on August 13, August 16, August 18, and August 24, SANI only billed Ms. Kaepplinger for services provided on August 13 and August 20 (A. Kaepplinger Aff. ¶ 3; PSOF Ex. 4, at 6, 9; PSOF Ex. 5, at 2-4, 7-13). In these circumstances, apart from the bills coming too late to tell Ms. Kaepplinger anything about the status of Drs. Zarnke and Michelotti when they treated her, we cannot say that the billing pattern would or should have notified Ms. Kaepplinger that the surgical services she received were rendered by independent physicians.

In sum, the consent forms upon which Rockford Hospital seeks to rely are not sufficiently clear and unambiguous to entitle it to a finding that Ms. Kaepplinger was on notice of Dr. Zarnke's and Dr. Michelotti's status as independent physicians. In addition, a reasonable jury could find that the badges and coats of these doctors conveyed the impression that they were agents of Rockford Hospital. And the remainder of the evidence identified by Rockford Hospital does not otherwise convince us that summary judgment in its favor is appropriate. We thus find sufficient genuine and material factual disputes regarding the "holding out" element that preclude summary judgment in Rockford Hospital's favor.

**2.**

We next turn to the "justifiable reliance" element, which asks whether "the plaintiff acted in reliance upon the conduct of the hospital or its agent, consistent with ordinary care and prudence." *Gilbert*, 622 N.E.2d at 795 (internal quotations omitted). This element is satisfied "if the plaintiff reasonably relies upon a hospital to provide medical care, rather than upon a specific

physician." *York*, 854 N.E.2d at 661 (citing *Gilbert*, 622 N.E.2d at 796). "[T]he 'critical distinction' is whether the plaintiff sought care from the hospital itself or looked to the hospital merely as a place for his or her personal physician to provide medical care[.]" *Id.* at 656 (citing and quoting *Gilbert*, 622 N.E.2d at 796).

Citing *Butkiewicz v. Loyola University Medical Center*, 724 N.E.2d 1037 (Ill. App. Ct. 2000), Rockford Hospital argues that the "justifiable reliance" element "is not satisfied where the plaintiff relied on their own personal physician and not a relationship between the alleged agent and the hospital" to seek care (Defs.' Summ. J. Mem., at 9). Thus, according to Rockford Hospital, there is no justifiable reliance here because Ms. Kaepplinger did not rely upon the hospital's relationship with Drs. Zarnke and Michelotti in seeking out care from Rockford Hospital; rather, she relied upon her own personal experience and the advice of an urgent care physician and Mr. Kaepplinger to do so (*Id.*, at 9-10; *see also* doc. # 176: Defs.' Reply, at 7 (contending that summary judgment on this element is appropriate "because [Ms. Kaepplinger] relied upon the advice of others in seeking care at" Rockford Hospital)).

Rockford Hospital reads the "justifiable reliance" element too narrowly. In *York*, the Supreme Court of Illinois expressly rejected a similar position taken by the defendant, who argued that *Butkiewicz* (the same case cited by Rockford Hospital) and another intermediate appellate court case showed that if a plaintiff does not rely upon a hospital's representations to make the *initial* decision to select the hospital for treatment, any subsequent reliance by the plaintiff on the hospital was insufficient to establish vicarious liability. 854 N.E.2d at 659-60. As the Court in *York* explained:

> Upon admission to a hospital, *a patient seeks care from the hospital itself,* except for that portion of medical treatment provided by physicians specifically selected by the patient. *If a patient has not selected a specific physician to provide certain treatment, it follows that the patient relies upon the hospital to provide complete*

> care—including support services such as radiology, pathology, and anesthesiology—through the hospital's staff.

*Id.* at 661 (emphases added). Thus, the Court in *York* placed no significance on what led the patient to seek care from the hospital; so long as the patient was admitted to the hospital and sought care from physicians who she did not specifically choose, she relied on the hospital for her care. And given that *York* found that relying on a chosen physician's care at a hospital did not foreclose a patient from *also* relying on the hospital for care, a physician's mere recommendation to visit the hospital in the first place would not foreclose the plaintiff from satisfying the "justifiable reliance" element. *See id.* ("If, however, a patient does select a particular physician to perform certain procedures within the hospital setting, this does not alter the fact that a patient may nevertheless still reasonably rely upon the hospital to provide the remainder of the support services necessary to complete the patient's treatment."). Instead, a plaintiff can satisfy the "justifiable reliance" element even where the plaintiff's physician referred her "to the hospital for treatment, if the plaintiff relied on the hospital to provide subsequent treatment by other doctors or specialists without disclosing their independent contractor status." *Spiegelman*, 911 N.E.2d at 1036.

Here, regardless of who suggested Rockford Hospital to Ms. Kaepplinger or why she ultimately chose Rockford Hospital (as opposed to any other hospital), Ms. Kaepplinger underwent surgical procedures performed by surgeons—Drs. Zarnke and Michelotti—whom she had never met or heard of before her admission (Defs.' Resp. to PSOF ¶¶ 1, 21). It is likewise undisputed that Ms. Kaepplinger was not given a choice as to which surgical group would consult with her during her stay at Rockford Hospital (*Id.*, ¶ 18). Rather, a hospital employee ordered an in-patient consultation from SANI, and at that time, Dr. Zarnke was SANI's on-call surgeon (*Id.*, ¶ 2; Zarnke Dep. at 52:18-53:19). Finally, there is no indication that Ms. Kaepplinger chose Rockford Hospital so that she could be treated by a particular physician.

Based on these facts, a reasonable jury could conclude that once Ms. Kaepplinger was admitted to Rockford Hospital, she sought care from the hospital itself and not from a specific physician. This is sufficient to satisfy the "justifiable reliance" element of the apparent authority inquiry. *See York*, 854 N.E.2d at 656, 661-62. Accordingly, we deny Rockford Hospital's motion for summary judgment on this element as well.

## CONCLUSION

For the foregoing reasons, the Rockford defendants' motion for partial summary judgment (doc. # 144) is granted in part and denied in part. We grant summary judgment to both Rockford Hospital and Rockford Physicians on the issue of actual agency with respect to the acts of Drs. Zarnke and Michelotti. We also conclude that plaintiffs have presented no evidence from which a reasonable jury could find that Drs. Zarnke and Michelotti were apparent agents of Rockford Physicians. However, we find the existence of genuine and material factual disputes with respect to whether Drs. Zarnke and Michelotti were apparent agents of Rockford Hospital. As a result, we grant summary judgment to Rockford Physicians on the claim of liability for the acts of Drs. Zarnke and Michelotti based on apparent authority, but deny summary judgment to Rockford Hospital on the claim of liability for the acts of these doctors based on apparent authority.

ENTER:

SIDNEY I. SCHENKIER
United States Magistrate Judge

DATE: July 9, 2019