# IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS - EASTERN DIVISION

| | |
|---|---|
| ANGELA KAEPPLINGER and BRIAN KAEPPLINGER ) ) ) | |
| Plaintiffs, ) ) | |
| v. ) ) | Case No. 1:17 CV 05847 |
| MICHAEL MICHELOTTI, M.D., MICHAEL MCCARTHY, D.O., MARK ZARNKE, M.D., SURGICAL ASSOCIATES OF NORTHERN ILLINOIS, LLC, an Illinois Limited Liability Company, ROCKFORD MEMORIAL HOSPITAL, an Illinois Not-For-Profit Corporation, and ROCKFORD HEALTH PHYSICIANS d/b/a MERCYHEALTH PHYSICIANS, an Illinois Not-For-Profit Corporation, ) ) ) ) ) ) ) ) ) ) ) ) | Judge Heather K. McShain |
| Defendants. ) | |

## PLAINTIFFS' MOTION TO SUBSTITUTE EXPERTS

Plaintiffs, ANGELA KAEPPLINGER and BRIAN KAEPPLINGER, by their counsel, David A. Axelrod, move for an Order granting Plaintiffs leave to withdraw Alexander Nagle, M.D. as a Rule 26(a)(2) expert witness and disclose Joshua Braveman, M.D. as a Rule 26(a)(2) witness. In support of this Motion, the Plaintiffs state:

### BACKGROUND

1. Plaintiff, ANGELA KAEPPLINGER ("Angela") suffered from a case of acute diverticulitis in her transverse colon starting on August 12, 2015.[1] She reported to the emergency room at Rockford Memorial Hospital ("RMH"). She was admitted and remained at RMH until August 29, 2015. During that time, she underwent a resection of her colon performed by Defendant,

---

[1] Diverticulitis is defined as an inflammation of one or more diverticula. Diverticula are small, bulging pouches that can form in the lining of the digestive system, most often in the colon.

MARK ZARNKE, M.D. ("Dr. Zarnke") on August 13, 2015. Subsequent to that surgery, on August 16, 2015, Angela was diagnosed with an anastomotic leak in her colon requiring a second procedure.[2] Defendant, MICHAEL MICHELOTTI, M.D. ("Dr. Michelotti") was in charge of Angela's care starting on the evening of August 14, 2015, after Dr. Zarnke left for vacation. During her hospitalization, Angela suffered from four surgical procedures, anastomotic leak, sepsis, intubation and numerous other injuries, physical and psychological.

2. On August 10, 2017, Plaintiffs filed this action against Dr. Zarnke, Dr. Michelotti, their medical group, SURGICAL ASSOCIATES OF NORTHERN ILLINOIS ("SANI") and RMH, alleging negligence in the care provided by Dr. Zarnke and Dr. Michelotti[3]. Pursuant to Section 2-622 of the Illinois Code of Civil Procedure, Plaintiffs attached a report attesting that a meritorious basis existed for proceeding with the lawsuit. The author of that report was Dr. Alexander Nagle, a general surgeon practicing at Northwestern Memorial Hospital. A copy of the August 10, 2017 Section 2-622 report authored by Dr. Nagle is attached as Exhibit A.

3. On January 10, 2019, the Honorable Sidney I. Schenkier (Ret.) entered a scheduling Order requiring Plaintiffs to make their expert disclosures by March 15, 2019. Plaintiffs complied with that scheduling Order by making their expert disclosures on March 15, 2019, as required by Judge Schenkier's Order. Dr. Nagle was disclosed as Plaintiffs' surgical expert. See Plaintiffs' Rule 26(a)(2) disclosures, attached as Exhibit B.[4]

---

[2] In all, Angela underwent four abdominal procedures while a patient at RMH.

[3] RMH has settled with Plaintiffs and, consequently, has been dismissed from the lawsuit.

[4] Plaintiffs have included Dr. Nagle's March 15, 2019 Report, but not the reports of other disclosed expert witnesses.

2

4. On July 18, 2019, Dr. Nagle was deposed by counsel for Defendants. See Deposition Transcript of Alexander Nagle, M.D., attached as Exhibit C (without exhibits).

5. In the course of questioning of Dr. Nagle by counsel for Dr. Zarnke and SANI, the following exchange occurred:

> "Q. Did you tell anyone at Northwestern that you were participating as an expert in a case involving a patient of Northwestern?
> A. No.
> Q. When did you -- strike that. You were aware from the start that Ms. Kaepplinger received treatment at Northwestern, correct?
> A. I don't recall.
> Q. You would have been made aware when you received her treatment records, correct?
> A. Correct.
> Q. Are you aware of any rules or directives, written or otherwise, prohibiting you as a Northwestern surgeon from providing expert consultations as a retained paid expert in a case involving a Northwestern patient?
> A. I'm not.

Exhibit C, Deposition of Alexander Nagle, M.D. at 9:11-10:4

6. During the questioning by counsel for RMH, the following questions and answers were elicited:

> "Q. As part of the Northwestern Medical Group, had you ever received any communications either in writing or orally from anyone in administration, risk management, or legal advising the physicians on staff that they were prohibited from giving standard of care expert testimony against any physician in the state of Illinois?
> A. No.
> Q. You're not aware of that rule existing?
> A. No. And, again, my -- I didn't feel in this specific case that I was giving opinions on Dr. Strong's treatment.
> Q. I understand. I'm not talking about just physicians on staff at Northwestern. Were you aware -- strike that. Had you been aware that it was the position of Northwestern Memorial Hospital that its

3

   physicians on its staff that are employed by the Northwestern Medical Group were precluded from giving standard of care testimony against other physicians in the state of Illinois.
   MR. AXELROD:  I'm going to object on foundation grounds and relevance grounds.
   A. I'm not aware of any policy like that.
   BY MR. BENJOYA:
   Q. And you haven't spoken with anybody in risk management or legal about your involvement in this case?
   A. No.
   Q. No one at the hospital knows your involvement in this case?
   A. Correct."

Exhibit C, Deposition of Alexander Nagle, M.D. at 199:11-200:18

  7.  Questioning by defense counsel was clearly improper, irrelevant and meant for the sole purpose of attempting to intimidate Dr. Nagle. Whether there was a policy at Northwestern Memorial Hospital or not, the clear attempt by defense counsel was to interfere with Dr. Nagle continuing to opine as an expert on behalf of the Plaintiffs. Further, any such policy which prevents physicians from testifying to their opinions about conduct which took place in Illinois is contrary to the purpose of the courts and litigation and cannot be condoned.

  8.  The attempt by defense counsel to intimidate Dr. Nagle may very well have been successful. Dr. Nagle continued to stay in contact with Plaintiffs' counsel for less than two months after his deposition, until September 6, 2019, when he sent an e-mail, a copy of which is attached as Exhibit D (without attachments). Since that time, Dr. Nagle has refused to have any contact with Plaintiffs' counsel despite numerous attempts including, but not limited to:

   A. Since September 6, 2019, counsel for Plaintiffs have attempted to contact Dr. Nagle by telephone dozens of times. These telephone attempts were both at his business office as well as his cell phone. Dr. Nagle never answered the telephone and never responded to the dozens

of telephone messages that were left requesting that he return the call. (See Declaration of David A. Axelrod, attached as Exhibit E); and

   B. Since September 6, 2019, David A. Axelrod has sent fifteen (15) e-mails to Dr. Nagle advising him as to the status of the litigation and requesting that he respond. Copies of the emails to Dr. Nagle are attached as Exhibit F. Dr. Nagle has failed to respond to each and every one of the e-mails. (See Exhibit E, Declaration of David A. Axelrod).

  9. Due to the refusal of Dr. Nagle to continue to participate as an expert witness in this litigation, Plaintiffs retained Dr. Joshua Braveman, a physician board certified in general surgery and colon and rectal surgery. He is an Adjunct Assistant Professor of Surgery at the Ohio State University and has been an attending surgeon at Grant Medical Center, Columbus, Ohio since September 2008. He has been practicing medicine since April 1997, attended a general surgery residency at the Lahey Clinic from July 1997 through June 2002 and did a fellowship in colon and rectal surgery at Lahey Clinic from July 2002 through June 2003. Dr. Braveman's practice includes specializing in gastrointestinal surgery. During his career, he has taken care of hundreds of gastrointestinal surgical patients, including, but not limited to, procedures involving the care and treatment of diverticulitis, both surgically and non-surgically.

  10. Dr. Braveman has issued a report critical of the care provided to Angela by Dr. Zarnke, Dr. Michelotti and SANI. A copy of Dr. Braveman's report is attached as Exhibit G. Plaintiffs seek to substitute Dr. Braveman for Dr. Nagle as their surgical expert.

**The Factors For Substitution of Expert Witnesses Requires This Court To Grant Plaintiffs' Request for Substitution of Expert Witnesses**

11. The factors that a court should review in order to determine whether to allow a substitution of experts are set out in *Assaf v. Cottrell, Inc.*, 2012 WL 245196 (N.D.Ill. 2012), a copy of which is attached as Exhibit H. Those factors include "(1) the surprise or prejudice to the blameless party; (2) any bad faith involved in not producing the evidence earlier; (3) the ability of the offering party to cure resulting prejudice; and (4) the amount of disruption to the trial that would result from permitting use of the evidence." The Court must "also take into account the effect that denial of the motion would have on the disposition of the case. Where exclusion of an expert witness necessarily entails dismissal of the case, the sanction 'must be one that a reasonable jurist, apprised of all the circumstances, would have chosen as proportionate to the infraction.'" *Id.*

    A.    **The Surprise or Prejudice to the Blameless Party.**

12. No prejudice will inure to the Defendants if this Court permits Plaintiffs to substitute experts. First, in this case, the Defendants are not blameless. Dr. Nagle was Plaintiffs' surgical expert throughout the entirety of the case, even to the extent that it was Dr. Nagle that provided the initial report required by Illinois law. It was only after defense counsel's attempts to intimidate Dr. Nagle at his deposition that Dr. Nagle refused to respond to Plaintiffs' attorneys. Had it not been for the questioning by defense counsel, Dr. Nagle would likely still be cooperating. Second, Plaintiffs are in full compliance with the Rule 26 scheduling Order. Plaintiffs disclosed Dr. Nagle exactly as ordered by this Court. Now, it has already been two years since expert disclosures took place in this case. Third, Dr. Braveman has reviewed the exact same records and documents that were provided to Dr. Nagle. As with Dr. Nagle, Dr. Braveman has opined that Dr. Zarnke, Dr.

Michelotti and SANI breached the standard of care in their care and treatment of Angela. Fourth, trial is not set to commence until September 20, 2021, over eight months from the presentation of this Motion. There is more than enough time for the parties to conduct any additional discovery necessitated by the substitution of expert witnesses. Plaintiffs will make Dr. Braveman available for deposition at a time convenient for defense counsel in the event that they determine they need to take his deposition. Further, Plaintiffs will not object to any supplemental disclosures that Defendants may deem necessary from their surgical experts in response to Dr. Braveman's report and opinions. Permitting Plaintiffs to substitute Dr. Braveman as Plaintiffs' surgical expert will not prejudice the Defendants.

   **B.**   **There Has Been No Bad Faith By the Plaintiffs.**

13.  There has been no bad faith by the Plaintiffs. Plaintiffs properly complied with this Court's scheduling Order. Plaintiffs have diligently continued to attempt to contact Dr. Nagle without success. In the meantime, the pandemic hit and the case was continued on several occasions as a result. When it became clear that Dr. Nagle was not going to cooperate, Plaintiffs sought and obtained an alternative expert, Dr. Braveman, well in advance of the scheduled trial.

   **C.**   **The Ability To Cure Any Prejudice to The Defendants.**

14.  As discussed above, permitting Plaintiffs to substitute Dr. Braveman for Dr. Nagle will not cause any prejudice to the Defendants. Nevertheless, any potential prejudice can be resolved by permitting the Defendants to conduct the deposition of Dr. Braveman and allowing them to supplement the disclosures of their surgical experts.

    **D.**    **Permitting Substitution of Experts Will Not Cause Any Disruption to the Trial.**

    15.    The trial is currently scheduled to commence starting on September 20, 2012, over eight months from the date of this Motion. And, this is assuming that the trial will proceed at that time given the pandemic and any changes to the trial date as a result. There is plenty of time for any additional discovery to be conducted in advance of the trial including, but not limited to, taking the deposition of Dr. Braveman and permitting Defendants' surgical experts to supplement their opinions to the extent necessary in response to Dr. Braveman's report.

    **E.**    **Not Permitting the Substitution Would Result in Plaintiffs Being Prevented from Presenting Their Case at Trial.**

    16.    Plaintiffs will be extremely prejudiced if this Court does not permit them to substitute Dr. Braveman for Dr. Nagle. This case revolves around the conduct of two general surgeons, Dr. Zarnke and Dr. Michelotti. Both Dr. Nagle and Dr. Braveman are critical of the care provided to Angela. Without Dr. Braveman, Plaintiffs will be left without a surgical expert in a case that revolves around the care provided by surgeons. As made clear in *Assaf*, denying Plaintiffs the opportunity to substitute Dr. Braveman for Dr. Nagle would not be "proportionate to the infraction." That is particularly so as Plaintiffs have not engaged in any conduct which could be classified as an "infraction." Rather, Plaintiffs have properly pursued this case complying with every order of this Court. It is only due to the unanticipated refusal of Dr. Nagle to continue as an expert in this case that Plaintiffs seek the substitution of experts.

## LOCAL RULE 37.2

    17.    On Tuesday, March 9, 2021, Axelrod sent a copy of this Motion to Substitute Experts to counsel for Dr. Zarnke and SANI (Michael Denning and Andrew Roth), and counsel for Dr.

Michelotti (Mark Meyer), requesting that they inform him of any objection by no later than Thursday, March 11, 2021 at 3:00 p.m. (A copy of the Axelrod March 9, 2021 e-mail is attached as Exhibit I). On Thursday, March 11, 2021, Denning contacted Axelrod by e-mail indicating that Dr. Zarnke and SANI object to Plaintiffs' Motion. Axelrod and Denning also spoke by telephone at which time Denning requested that he be provided with fourteen (14) days to file a response opposing the Motion to Substitute Experts. In the event that the Court permits a response, Plaintiffs seek seven (7) days thereafter to file a reply.

18. In accordance with the requirements of Local Rule 37.2, after consultation by telephone and good faith attempts to resolve differences, counsel for Plaintiffs and counsel for Dr. Zarnke and Dr. Michelotti are unable to reach an accord.

19. Axelrod has not received a response from counsel for Dr. Michelotti, Mark Meyer. Axelrod also telephoned Meyer on Thursday, March 11, 2021, at approximately 3:15 p.m., and left a message for Meyer to return his call. At the time this Motion was filed, Axelrod has not received a return telephone call or any other communication from Meyer. Based on the lack of response, Plaintiffs suggests that Dr. Michelotti does not object to Plaintiffs' Motion to Substitute Experts.

WHEREFORE, Plaintiffs, ANGELA KAEPPLINGER and BRIAN KAEPPLINGER, pray this Court enter an Order as follows:

    A.    Granting Plaintiffs' Motion to Substitute Experts, permitting Plaintiffs to substitute Dr. Joshua Braveman as their general surgery expert in place of Dr. Alexander Nagle; and

    B.    For such other and further relief as the Court deems just and appropriate.

          ANGELA KAEPPLINGER and BRIAN KAEPPLINGER

By:      /s/ David A. Axelrod
          One of Plaintiffs' Attorneys

David A. Axelrod (ARDC No. 6187092)
Jason M. Kleinman (ARDC No. 6280376)
Brian S. Shallcross (ARDC No. 6285153)
Mav D. Marion (ARDC No. 6306509)
David A. Axelrod & Associates, P.C.
20 S. Clark Street, Suite 1800
Chicago, Illinois 60603
(312) 782-4600
(312) 782-3015 (Facsimile)
daa@axelrodpc.com
jkleinman@axelrodpc.com
bshallcross@axelrodpc.com
mmarion@axelrodpc.com