## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

ANGELA KAEPPLINGER AND
BRIAN KAEPPLINGER,

      Plaintiffs,

      v.

MICHAEL MICHELOTTI, M.D., ET AL.

      Defendants.

No. 17 CV 5847

Magistrate Judge McShain

### MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendants Dr. Mark Zarnke's and Surgical Associates of Northern Illinois, LLC's ("SANI") Motion for Leave to Call Malcolm Bilimoria, M.D. in Lieu of Joseph S. Kokoszka, M.D., as Defendants' Expert Witness at Trial ("Defendants' Motion") [320],[1] which Plaintiffs Angela Kaepplinger and Brian Kaepplinger oppose [322]. The Court has considered the parties' briefing and attached exhibits. For the following reasons, Defendants' Motion is granted.

### Factual Background

The Court has already set forth the relevant factual background in its January 28, 2022 Memorandum Opinion and Order on the parties' pre-trial motions *in limine* [318], but will repeat it here for ease of reference.

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings. For the sake of efficiency, the Court will use "Defendants" herein to refer specifically to the movants, Dr. Zarnke and SANI, in its discussion of their positions and arguments. The Court will otherwise specify between the individual defendants, including the non-moving defendant Dr. Michelotti, as necessary.

This is a medical malpractice case. On August 12, 2015, Angela Kaepplinger arrived at Rockford Memorial Hospital ("RMH") in Rockford, Illinois with abdominal pain. [130] 2, 6, ¶¶ 1, 34. A CT scan revealed a possible abscess in her colon. [*Id.*] 2, 6, ¶¶ 1, 35. She was admitted to and remained at RMH until August 29, 2015. [*Id.*] 6, 14, ¶¶ 35, 80. After her admission, Defendant Mark Zarnke, M.D., was consulted and examined Ms. Kaepplinger, and noted his impression that she had transverse diverticulitis with an abscess. [*Id.*] 6 ¶37. Dr. Zarnke discussed treatment options with Ms. Kaepplinger, including antibiotic therapy and surgery, and ultimately recommended surgery. [*Id.*]. During her hospital stay Ms. Kaepplinger eventually underwent four surgical procedures, including a laparotomy and transverse colectomy performed by Dr. Zarnke. [*Id.*] 6, ¶ 38; [221] 2. Plaintiffs' Second Amended Complaint alleges that the procedure led to multiple complications during Ms. Kaepplinger's hospitalization at RMH, including a delayed diagnosis of an anastomic leak by Michael Michelotti, M.D., an infection, additional invasive procedures, and permanent injuries. [130] 2, 14, ¶¶ 1, 80; [221] 2.

On August 10, 2017, Plaintiffs filed suit against Dr. Zarnke, Dr. Michelotti, and their medical group, SANI, alleging medical negligence in the care provided to Ms. Kaepplinger at RMH, and loss of consortium on behalf of Mr. Kaepplinger. [1]; [221] 2.[2] The case is currently set to proceed to trial starting on September 12, 2022. [316].

---

[2] The Complaint also named Michael McCarthy, D.O., RMH, and Rockford Health Physicians as defendants. McCarthy and Rockford Health Physicians were later dismissed without prejudice, pursuant to the parties' stipulation. [140, 181]. Plaintiffs also settled with Defendant RMH. [215]. Dr. Michelotti, Dr. Zarnke, and SANI remain defendants in the case.

The present dispute arises out of Defendants Dr. Zarnke and SANI's designation of two surgical standard of care expert witnesses to testify at trial on their behalf: Joseph Kokoszka, M.D., and Malcolm Bilimoria, M.D. Dr. Zarnke and SANI first disclosed Dr. Kokoszka in their Rule 26(a)(2) disclosures submitted on May 31, 2019, which was the deadline set by the Court. [133].[3] The disclosure indicated that Dr. Kokoszka would testify as to the ways in which Dr. Zarnke met the applicable standard of care of a reasonably careful general surgeon, and attached his written report. [273-1] 2, 9. On the same day, former-Defendant RMH disclosed Dr. Bilimoria as one of their Rule 26(a)(2)(B) witnesses. [273-2] 2. RMH's disclosure indicated that Dr. Bilimoria would testify consistent with his written report, in which he offered opinions that both Dr. Zarnke and Dr. Michelotti acted appropriately within the standard of care. [*Id.*] at 2, 18. Also on the same day, Defendant Dr. Michelotti, who is represented by separate counsel than Dr. Zarnke and SANI, disclosed Anthony Altimari, M.D., as his Rule 26(a)(2)(B) witness. [174-1] 1. The disclosure indicated Dr. Altimari would testify to his opinion that Dr. Michelotti met the standard of care of a reasonably careful general surgeon. [*Id.*]. In short, Dr. Zarnke and SANI designated one expert on both of their behalf with respect to Dr. Zarnke's conduct, Dr. Michelotti designated one expert with respect to his conduct, and RMH designated one expert with respect to *both* Dr. Zarnke and Dr. Michelotti.

---

[3] The scheduling order was entered on January 10, 2019, by Judge Sidney I. Schenkier (Ret.), the magistrate judge presiding over the case at the time. Pursuant to Local Rule 73.1(C), the parties consented to the reassignment of this case to a magistrate judge to conduct all proceedings. [76].

On October 13, 2020, about a month after RMH was dismissed from the case pursuant to settlement, counsel for Dr. Zarnke and SANI notified Plaintiffs' counsel of their intent to call Dr. Bilimoria as "another expert witness at trial." [273-3]. Defense counsel claimed they would call Dr. Bilimoria "pursuant to our Supplemental Rule 26(a) disclosure," and pointed to language in a footnote in their May 31, 2019, disclosure which stated that Defendants "expressly incorporate herein and disclose all of the individuals disclosed by the Plaintiff and Co-Defendants in this action and all individuals who sat for depositions in this action." [273] 3; [273-3]. Plaintiffs' counsel objected to the addition of Dr. Bilimoria, and asked whether Dr. Zarnke and SANI intended to call both Dr. Kokoszka and Dr. Bilimoria at trial, to which defense counsel responded that they did. [*Id.*].

## Procedural background

On November 12, 2021, in accordance with the scheduling order entered by the Court, the parties submitted their pre-trial motions *in limine*. At the time, the trial was set to begin on January 21, 2022. [300].[4] In one of their motions, Plaintiffs sought to preclude Defendants from calling Dr. Bilimoria at trial. [273]. Plaintiffs argued that Dr. Bilimoria should be barred from testifying at trial under Federal Rule of Evidence 403, because his testimony would be needlessly cumulative of the other

---

[4] The case was originally set to proceed to trial in February 2020, but the Court stuck that trial date at Plaintiffs' request due to Plaintiffs' counsel's trial schedule in another case. [183, 185]. After a period where the parties engaged in ongoing settlement discussions, the Court reset the trial for January 2021 [210]. The January 2021 trial was subsequently reset several times throughout 2021 due to the ongoing COVID-19 pandemic. [219, 220, 228]. Eventually, in August 2021, the parties jointly agreed to reset the trial for January 2022 with the hopes that by then conditions would improve such that the trial could finally take place. [241, 242].

defense expert witnesses, Dr. Kokoszka and Dr. Altimari. [273, 301]. Plaintiffs further argued that Dr. Zarnke and SANI improperly attempted to add Dr. Bilimoria as a witness after the Rule 26(a)(2)(B) disclosure deadline, and therefore were precluded from calling him as an expert. [*Id.*]. In response, Defendants argued that Dr. Bilimoria's testimony would not be cumulative, because his testimony was broader than that of Dr. Kokoszka and included opinions related to both Dr. Zarnke and Dr. Michelotti. [279]. They also argued that Dr. Bilimoria was properly disclosed under Rule 26(a)(2), and that even if his disclosure violated Rule 26, such violation was harmless and resulted in no prejudice to Plaintiffs. [*Id.*]. Dr. Michelotti filed a motion indicating he joined in Dr. Zarnke and SANI's opposition to Plaintiffs' motion *in limine*. [290, 294].

The Court held a Final Pretrial Conference on December 16, 2021, which was continued to December 20, 2021. [307, 309]. During the conference, the Court heard oral argument on the parties' motions *in limine* and ruled on the record with respect to all but three of the motions. [309]. Among its rulings on the record, the Court granted Plaintiffs' motion to bar Defendants from calling Dr. Bilimoria at trial. [*Id.*]. The Court indicated that it would be following up on its oral ruling on that particular motion with a written order that explained its reasoning, and that such order would also provide the Court's rulings on the remaining motions on which it had reserved ruling. [309].

At the conclusion of the conference on December 20, 2021, in light of the Court's ruling on the record granting Plaintiff's motion with respect to Dr. Bilimoria, counsel

for Dr. Zarnke and SANI asked that they be allowed to pick which expert witness—between Dr. Kokoszka and Dr. Bilimoria—they call at trial. Counsel argued that in situations where a court finds that a parties' two proposed experts are cumulative, the party that is proposing to call those experts is given the opportunity to decide which expert it will ultimately call. Plaintiffs objected to this request on two bases: the cumulative nature of Dr. Bilimoria's testimony as to both Dr. Kokoszka and to Dr. Altimari, and the untimely and improper disclosure by Dr. Zarnke and SANI of Dr. Bilimoria under Rule 26(a)(2)(B). Counsel for Dr. Michelotti did not join in the request and stated that Dr. Michelotti only intended to call his expert Dr. Altimari at trial. The Court indicated it would consider Dr. Zarnke and SANI' request as part of issuing its written order.

On January 4, 2022, before the Court had issued its written opinion on the parties' motions in limine, the January 22, 2022 trial date was stricken due to the ongoing COVID-19 pandemic. [312, 316]. Although the Court was prepared to accommodate a Spring or Summer jury trial, counsel for Dr. Zarnke and SANI were unavailable until September 2022, due to counsel's packed trial schedule resulting from the pandemic. [316]. Plaintiffs' counsel objected to delaying the trial until September 2022, and requested an earlier date in Spring. Although the Court was mindful of Plaintiffs' opposition to a longer delay, given the state of the COVID-19 pandemic, and taking into consideration the availability of counsel and the parties' rights to proceed to trial with their attorneys of choice, the Court found it appropriate to proceed with resetting the jury trial for the September 2022 date. *See* [316] (citing

*Arthur Pierson & Co. v. Provimi Veal Corp.*, 887 F.2d 837, 839 (7th Cir. 1989) (noting that district courts have "substantial inherent power to control and to manage [their] docket"). The trial date was rescheduled for September 12, 2022. [*Id.*].

On January 28, 2022, the Court issued its Memorandum Opinion and Order addressing the parties' outstanding motions *in limine*, and providing the Court's reasoning for granting Plaintiffs' motion to bar Dr. Bilimoria. [318]; *see generally Kaepplinger v. Michelotti,* No. 17 CV 5847, 2022 WL 267886 (N.D. Ill. Jan. 28, 2022*).* The Court found that Dr. Kokoszka and Dr. Bilimoria would "present nearly identical opinions on the same subject, that is, that Dr. Zarnke did not deviate from the standard of care of a reasonably careful general surgeon." [318] 11. The Court also found that, insofar as Dr. Bilimoria's opinions were broader than those of Dr. Kokoszka, because they also covered Dr. Michelotti's conduct, his opinions with respect to Dr. Michelotti were likewise cumulative of Dr. Michelotti's expert witness, Dr. Altimari. [*Id.*] 15. The Court thus held that Dr. Bilimoria's testimony would be unnecessarily cumulative of Dr. Kokoszka and Dr. Altimari, and therefore Dr. Zarnke and SANI would not be allowed to call both experts at trial. [*Id.*] 16.

As to Dr. Zarnke and SANI' request at oral argument that they be allowed to choose between Dr. Kokoszka and Dr. Bilimoria, the Court found that, given the manner in which Dr. Bilimoria had been disclosed, and the fact that the trial date had been reset for September 12, 2022, there were issues that required further clarification by the parties before the Court could decide the issue. [*Id.*] 17. The Court therefore denied without prejudice Dr. Zarnke and SANI' request to choose between

7

the two experts, with leave for those Defendants to formally move to call Dr. Bilimoria in lieu of Dr. Kokoszka should they decide to continue to seek that relief.

On February 21, 2022, Dr. Zarnke and SANI proceeded to file their motion formally asking for leave to call Dr. Bilimoria at trial in lieu of Dr. Kokoszka. [320]. Plaintiffs filed their opposition on March 22, 2022. [322]. The matter is thus fully briefed and the Court can proceed to the merits of Defendants' request.

## Legal Standards

This is the second time in this case a party has asked the Court for leave to change their designated expert witness for trial: Plaintiffs' previously moved to substitute their originally disclosed standard of care expert, Dr. Alexander Nagel, for a different expert witness, Dr. Joshua Braveman, M.D. *See* [236]; *Kaepplinger v. Michelotti*, No. 17 CV 5847, 2021 WL 2633312 (N.D. Ill. June 25, 2021). As the Court noted in its ruling on Plaintiffs' motion to substitute, the Federal Rules of Civil Procedure do not expressly dictate the standard a court should use to assess a party's request to substitute an expert witness for trial. *See generally Kaepplinger,* 2021 WL 2633312, at *2-3. Some courts treat such motions as a request to amend the scheduling order under Rule 16(b)(4), which requires a showing of good cause, where others look to Rules 26 and 37 by construing the request as an untimely expert designation under Rule 26(a) and deciding whether to exclude the substitute expert as a discovery violation under Rule 37(c). *Id.* (collecting and reviewing cases).

Here, Defendants do not frame their motion as a request to "substitute" *per se*, but rather as a request to call Dr. Bilimoria "in lieu of" Dr. Kokoszka. This distinction

is presumably because, as discussed further below, Defendants maintain that Dr. Bilimoria has always been properly designated as one of their expert witnesses, and therefore they are not seeking to substitute, but merely to pick among their previously disclosed experts. Regardless of the framing though, both sides present their arguments in terms of Rules 26 and 37, as opposed to Rule 16. The Court will therefore analyze Defendants' Motion under the same standard used by the parties.[5]

Rule 26(a)(2)(D) provides that "[a] party must make [its expert] disclosures at the times and in the sequence that the court orders." Fed. R. Civ. P. 26(a)(2)(D). Under Rule 37(c)(1), "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1)).

The determination of whether a Rule 26(a) violation is justified or harmless under Rule 37(c) is entrusted to the broad discretion of the district court. *Mid-America Tablewares, Inc. v. Mogi Trading Co*., Ltd., 100 F.3d 1353, 1363 (7th Cir. 1996). The Court "need not make explicit findings concerning the existence of a substantial justification or the harmlessness of a failure to disclose." *David v. Caterpillar, Inc*., 324 F.3d 851, 857 (7th Cir. 2003) (citation omitted). Instead, the

---

[5] The Court thus need not decide whether the substitution should be allowed under Rule 16(b)(4). The Court notes however, as it did in its ruling on Plaintiffs' motion, that some courts presented with motions to substitute find the standards under Rules 16(b)(4) and 37(c)(1) to be "coexistent." *See Kaepplinger*, 2021 WL 2633312, at *4 (holding the Court did not need to determine whether there was any distinction between the standards of the two rules, because it found Plaintiffs had satisfied both standards) (citing *J.F. by Sifuentes v. Abbott Laboratories, Inc*., No. 14-CV-847, 2017 WL 992781, at *2 (S.D. Ill. Mar. 15, 2017).

Seventh Circuit has explained several factors that guide the Court's determination: "(1) the prejudice or surprise to the party against whom the evidence is offered; (2) the ability of the party to cure the prejudice; (3) the likelihood of disruption to the trial; and (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date." *Id.* (citations omitted). "The offending party bears the burden to show that its Rule 26 failure is substantially justified or harmless." *PCM Leasing, Inc. v. BelGioso Cheese, Inc.*, No. 16 CV 50076, 2019 WL 4567576, *3 (N.D. Ill. July 11, 2019).

## Discussion

Defendants advance three main arguments in support of their request to call Dr. Bilimoria at trial in lieu of Dr. Kokoszka: (1) when a party has an expert witnesses barred as cumulative, they have the right to choose which of those experts testifies at trial; (2) Dr. Bilimoria was properly disclosed under Rule 26; and (3) even if the disclosure of Dr. Bilimoria did not comport with Rule 26, any violation of the rule was harmless. [320] 2, 10.

The Court addresses each of these arguments below, as well as Defendants' proposal for the scope of Dr. Bilimoria's testimony should he be allowed to testify. The Court finds that Defendants' attempt to belatedly add Dr. Bilimoria as an expert witness was not proper under Rule 26, and they therefore have no "right" to choose between him and their properly disclosed expert, Dr. Kokoszka. However, the Court also finds, based on its consideration of the *David v. Caterpillar* factors mentioned above, that Defendants' untimely disclosure of Dr. Bilimoria is harmless, and they will therefore be permitted to call him at trial in lieu of Dr. Kokoszka. Finally, the

Court holds that Dr. Bilimoria's testimony will be limited to the same subject as Dr. Kokoszka's expert report, that being Dr. Zarnke's conduct.

### A. Dr. Zarnke and SANI's disclosure of Dr. Bilimoria was improper, therefore they have no right to "choose" between the two experts.

As a threshold matter, Defendants are correct that when a party or parties have disclosed multiple Rule 26(a)(2) expert witnesses on the same subject, and a court subsequently finds one or more of the experts would be cumulative, the court will generally allow the party to choose which of its designated experts it ultimately calls at trial. *See* [320] 2-5. Indeed, as Defendants point out in their motion, this Court's order holding that Dr. Bilimoria's testimony would be cumulative cited to many cases where parties were permitted to choose between their cumulative experts. *See Kaepplinger*, 2022 WL 267886, at *5-6 (citing *Dahlin v. Evangelical Child & Fam. Agency*, No. 01 C 1182, 2002 WL 31834881, at *5 (N.D. Ill. Dec. 18, 2002) (holding that two of plaintiffs' designated experts were cumulative and therefore they would "be required to choose between these two expert witnesses"); *Abrams v. Van Kampen Funds, Inc.*, No. 01 C 7538, 2005 WL 88973, at *11 (N.D. Ill. Jan. 13, 2005) (holding defendants were precluded from calling both experts that authored a joint report because their testimony would be cumulative, but that the defendants "may choose which expert they prefer to use"); *Hall v. Hall*, No. 14 C 6308, 2018 WL 1695365, at *5 (N.D. Ill. Apr. 7, 2018) (finding defendants two retained

standard of care experts would present cumulative testimony, and therefore the "defendants will have to choose between [the experts] to testify. . .").

However, as Plaintiffs point out in response, in none of the cases cited by Defendants was there also a dispute over whether one of the cumulative experts was properly and timely disclosed under Rule 26(a)(2). [322] 4. In fact, the Court noted in its prior order on the parties' motions *in limine* that the circumstances here were distinguishable from the cases cited above, because those cases all involved parties choosing between experts "previously included on their timely Rule 26(a)(2) disclosures." *See Kaepplinger*, 2022 WL 267886, at *8.[6] Thus, Defendants' argument that they have a right to choose between the two experts presupposes that Dr. Bilimoria was properly disclosed as one of their expert witnesses in the first place. Though the Court stopped short of expressly ruling on that question in its prior order, it does so now, and holds that the disclosure was improper.

As noted above, the deadline for the parties to disclose their Rule 26(a)(2)(B) expert witnesses was May 31, 2019. [133]. In their original response to Plaintiffs' motion *in limine,* Defendants claimed that Dr. Bilimoria was in fact properly and timely disclosed by this deadline, because their May 2019 disclosure included

---

[6] This is true in the cases cited in the preceding paragraph, as well as the additional cases Defendants cite in their brief from across various district courts. *See* [320] 4-5 (citing *Evans v. Mauch,* No. 15-9100-CM, 2016 WL 8254775, at *2 (D. Kan. June 1, 2016); *Stricklin v. Bordelon,* No. 19-CV-1242-WJM-KMT, 2021 WL 2375868, at *3 (D. Colo. June 10, 2021); *AVNET, Inc. v. MOTIO, Inc.,* No. 12 C 2100, 2016 WL 3365430, at *2 (N.D. Ill. June 15, 2016); *Sunflower Condo. Ass'n, Inc. v. Auto-Owners Ins. Co.,* No. 16-CV-2946-WJM-NYW, 2018 WL 1250607, at *3 (D. Colo. Mar. 12, 2018)). While these courts all allowed the parties involved to choose between their cumulative experts, none of the cases involved a challenge to whether one of the experts was timely disclosed.

language in a footnote adopting all of their co-defendants' disclosures. [279] 6. Defendants suggested that their counsel's message to Plaintiffs' counsel in October 2020—16 months later when RMH was dismissed from the case—indicating that they intended to call Dr. Bilimoria as "another expert witness at trial" was not a new or separate disclosure, but rather was meant to "remove any doubt as to their *continuing intention* to call Dr. Bilimoria at trial even after the settlement of the co-defendant hospital." [279] 6. Defendants repeat these same arguments in their instant motion, suggesting that Dr. Bilimoria was adopted by reference in their timely Rule 26(a)(2)(B) disclosure, and that their October 2020 communication was merely meant to confirm and reinforce their intention to call Dr. Bilimoria at trial. *See* [320] 7, 10.

The Court is not persuaded that Defendants' inclusion of boilerplate language generally adopting all witnesses disclosed by all other parties—which was included in a footnote in their disclosure—satisfies the requirements of Rule 26(a)(2)(B), which requires a party to clearly identify the expert witnesses that *it* intends to call at trial. *See, e.g.*, *Station Enterprises, Inc. v. Ganz, Inc.,* No. 07-CV-14294, 2009 WL 3059148, at *5 (E.D. Mich. Sept. 24, 2009) ("the Court does not find that boiler plate reservations of rights that conflict with the Court's scheduling order allow for the tardy identification of witnesses."). Defendants have not cited, and the Court has been unable to find, an example of a case where a court found similar boilerplate language in a Rule 26(a)(2)(B) expert disclosure was sufficient to allow a party to designate an expert for trial that was only disclosed by another party that had been dismissed from the case.

13

Plaintiffs, on the other hand, point out that the Seventh Circuit has held that "[t]he plain meaning of Rule 26(a)(2) demands a *formal* designation for expert disclosures." *See* [322] 3 (citing *Karum Holdings LLC v. Lowe's Companies, Inc.*, 895 F.3d 944, 951 (7th Cir. 2018) (emphasis added)). In *Karum Holdings LLC,* the Seventh Circuit found that the district court did not abuse its discretion in ruling that a party's purported expert disclosure was inadequate, where the party only listed the proposed witness in its timely disclosure as a Rule 26(a)(1)(A) fact witness, and then, as the trial approached, attempted to claim the individual could provide expert testimony. *Karum Holdings LLC*, 895 F.3d at 951. Although the facts of *Karum Holdings LLC* are distinguishable—here Dr. Bilimoria was disclosed as an expert witness, not a fact witness—the general principal that the plain language of Rule 26(a)(2) requires a *formal* designation of experts is equally applicable. Dr. Zarnke and SANI were required to formally designate all their anticipated expert witnesses for trial, and the Court finds that they cannot escape this formal requirement by relying on a footnote incorporation of all other witnesses disclosed by all other parties.

The Court acknowledges, of course, that Dr. Zarnke and SANI likely anticipated little need to formally designate Dr. Bilimoria for themselves by the May 2019 deadline, as at that time he was being retained and disclosed by a co-defendant represented by separate counsel. However, whether or not they had reason to designate Dr. Bilimoria prior to the deadline, once RMH settled and Dr. Zarnke and SANI decided they would like to use RMH's expert, their proper course would have been to seek leave to modify the Court's scheduling order under Rule 16(b)(4) so that

14

they could formally supplement their Rule 26(a)(2) disclosures. *See Station Enterprises, Inc.*, 2009 WL 3059148, at *5; Fed. R. Civ. P. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent.). This they failed to do, opting instead to take the position that Dr. Bilimoria had already been disclosed prior to the deadline because of their footnote incorporation of all other witnesses. But, as the Court has already stated, this position has no support in the case law, and a boilerplate footnote does not constitute a formal disclosure as is required under Rule 26(a)(2).

The Court thus finds that Defendants did not timely and properly disclose Dr. Bilimoria as a Rule 26(a)(2)(B) witness. They therefore have no "right" to choose between the two cumulative expert witnesses.

### B. The improper disclosure is harmless.

As the Court finds that Dr. Zarnke and SANI did not properly include Dr. Bilimoria in their May 2019 Rule 26(a)(2)(B) disclosure, the question is whether their failure to timely disclose him, and their attempt to add him as a witness for trial now, is substantially justified or is harmless. *See* Fed. R. Civ. P. 37(c)(1)) ("[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence . . . at a trial, unless the failure was substantially justified or is harmless."); *see also David*, 324 F.3d at 857. The Court finds that, based on its consideration of the *David v. Caterpillar* factors, Dr. Zarnke and SANI's belated addition of Dr. Bilimoria is

harmless, and therefore they should be permitted to call him as an expert at trial in lieu of Dr. Kokoszka.

### 1. *Prejudice or Surprise*

The Court first considers whether Plaintiffs will be prejudiced or surprised should Defendants be permitted to call Dr. Bilimoria in lieu of Dr. Kokoszka. Defendants claim that there can be no claimed surprise or prejudice should they be permitted to call Dr. Bilimoria, because Plaintiffs have had his disclosure and expert report for well over two years and have already taken his deposition. [320] 6-7. Further, Defendants point out that the Court has already ruled that Dr. Bilimoria's and Dr. Kokoszka's testimony, at least with respect to Dr. Zarnke, is the same, *i.e.* cumulative, therefore there is no prejudice or surprise to Plaintiffs in having to face one expert over the other. [*Id.*]. Plaintiffs argue in response that Defendants are ignoring the strategic considerations they made in deciding to settle with RMH, one of which was the relative strength of RMH's disclosed expert, Dr. Bilimoria, as opposed to the other defendants' experts. [322] 6. Plaintiffs assert they were "entitled to assume the Court will properly enforce Rule 26(a)" when formulating their litigation strategy, and that to allow Dr. Zarnke and SANI to rely on RMH's properly disclosed expert after they have settled, whom Defendants seem to agree is a "superior" expert, prejudices Plaintiffs by depriving them of the benefit of the bargain of their settlement with RMH. [*Id.*]. In other words, Plaintiffs claim they would be

prejudiced because they would be forced to prepare for an expert witness at trial who was only properly disclosed by a party with whom they have settled. [*Id.*].

The Court acknowledges that there may have been an initial unfair surprise to Plaintiffs in October 2020, when Defendants first indicated their intent to call Dr. Bilimoria at trial, which at the time was scheduled to begin in just a few months in January 2021. But of course, that trial date has since been reset several times, and is currently four months away in September 2022. Thus, over 18 months have now passed since Plaintiffs were initially notified that Defendants would attempt to call Dr. Bilimoria at trial. Further, Plaintiffs had Dr. Bilimoria's expert disclosure and report from RMH as of May 2019, and deposed him on his report in July 2019 [320] 6-7; [295] 18. At this time then, nearly three years after Dr. Bilimoria's report was disclosed and over 18 months after Defendants indicated their intent to call him at trial, the Court believes there is minimal prejudice or surprise from Dr. Bilimoria's testimony should he be called at trial.

Additionally, while it is somewhat ironic for Defendants to now point to the cumulative nature of the expert witnesses support their argument that Plaintiffs face no prejudice, given that Defendants vigorously disputed that the testimony was cumulative, the Court does find Defendants' point valid in relation to their instant motion. That Dr. Kokoszka's and Dr. Bilimoria's testimony with respect to Dr. Zarnke overlaps substantially, to the point the Court found them cumulative, seems to belie the risk that Plaintiffs will be prejudiced or surprised in having to prepare for one expert's testimony over the other.

As to Plaintiffs' arguments in response, the Court has no reason to doubt Plaintiffs' claim that their settlement with RMH was motivated, at least in part, based on their beliefs regarding the relative strength of the parties' experts. The Court thus recognizes that there may be some measure of "harm" to the Plaintiffs in being required to prepare for an expert at trial whom they had anticipated would no longer be involved in the case due to their settlement with RMH. But Plaintiffs cite to no authority that this harm of being denied the benefit of their settlement is the kind of prejudice that is contemplated by Rule 37 and the *David v. Caterpillar* factors. Indeed, absent some express agreement between the parties to a settlement and their expert witnesses, there is nothing to prevent non-settling defendants such as Dr. Zarnke and SANI from pursuing and attempting to call an expert witness of a settled co-defendant for their own case.

Certainly, there are procedural steps a party must generally follow to designate a new expert which, as discussed above, Defendants failed to follow here. But despite their suggestion to the contrary, Plaintiffs were not "entitled to assume" that the Court would rule in their favor and exclude Dr. Bilimoria from trial based on Defendants' failure to comply with the rules. Rather, as Plaintiffs are well aware from the Court's ruling on their own motion to substitute, Rule 37 creates an exception to the sanction of exclusion where an untimely disclosure is harmless or substantially justified, see Fed. R. Civ. P. 37(c)(1), and the determination of whether a discovery violation is harmless is left to the broad discretion of the trial Court. *Mid-America Tablewares, Inc.*, 100 F.3d at 1363. Hence there was always the possibility

that the Court would permit Defendants to call Dr. Bilimoria at trial, even if Defendants plainly violated Rule 26, and Plaintiffs' assumption about how the Court would ultimately rule on that question is not a basis to claim prejudice from a ruling going the other way.

Finally, insofar as Plaintiffs face any "prejudice" from being forced to prepare for what they consider to be a superior expert to Dr. Kokoszka, this is not the kind of "prejudice" that warrants exclusion. *See Hicks v. Avery Drei, LLC*, 654 F.3d 739, 744 (7th Cir. 2011) ("[plaintiff's] requested remedy convinces us that the alleged prejudice arises from the evidence's power to persuade and not the timing of its disclosure. That is not a kind of 'prejudice' that warrants exclusion.") (citing *Cobige v. City of Chicago, Ill.*, 651 F.3d 780, 785 (7th Cir.2011) ("This kind of effect is not 'prejudice' at all—not unless we count as 'prejudice' all evidence that undermines the other side's contentions....")). Although Plaintiffs frame their arguments in terms of the timing of the disclosure and the benefit of their settlement, implicit in their argument is the suggestion that they face prejudice because Dr. Bilimoria is a superior or more persuasive witness than Dr. Kokoszka. It therefore strikes the Court that at least part of the prejudice Plaintiffs are claiming here "arises from the evidence's power to persuade and not the timing of the disclosure," which is "not a kind of 'prejudice' that warrants exclusion." *See Id.*[7]

---

[7] The Court recognizes that in its ruling on Plaintiffs' motion to substitute it found there would be "some measure of prejudice" to Defendants where Defendants pointed in part to the fact that Dr. Braveman was a "superior" expert to Dr. Nagel. *Kaepplinger*, 2021 WL 2633312, at *5. However, the circumstances are notably distinguishable, as there Plaintiffs were seeking to substitute an entirely new expert after the close of discovery whose report had just recently been disclosed and whom had never been deposed. Thus there were sources of

On balance, the Court finds that Plaintiffs will not face any significant prejudice or surprise if forced to prepare for Dr. Bilimoria at trial. This factor thus weighs in favor of Defendants.

### 2. *Ability to cure prejudice and likelihood of disruption to trial*

Though the Court does not find any significant prejudice to Plaintiffs in Dr. Bilimoria being allowed to testify at trial, to the extent such prejudice does exist, the Court also finds that Plaintiffs have sufficient time and ability to cure it. The second factor thus also weighs in favor of Defendants.

Defendants argue that Plaintiffs have already had a substantial opportunity to cure any prejudice since the Defendants notified them of their intent to call Dr. Bilimoria in October 2020. [320] 7-8. Defendants point out that after learning of this, Plaintiffs did not file a motion or seek any supplemental deposition, or seek supplemental discovery. [*Id.*]. Instead, Defendants note that Plaintiffs filed their own motion to substitute their expert, and sent Dr. Bilimoria's deposition to that expert so that he could respond. Defendants suggest that this demonstrates Plaintiffs in fact assumed that Dr. Bilimoria may still be a witness in the case. [*Id.*] 8. Plaintiffs assert in response that this is untrue, and regardless argue that the Seventh Circuit has rejected the argument that a Rule 26(a) violation is harmless simply because the opposing party knew a witness may testify in some capacity. [*Id.*]. Plaintiffs further argue that the October 2020 communication only indicated an intent to call both

---

prejudice other than Defendants' claim that Dr. Braveman was "superior." And regardless, the Court allowed the substation.

witnesses, not the Defendants' current request to replace Dr. Kokoszka with Dr. Bilimoria. [*Id.*].

Plaintiffs are correct that, in general, a late disclosure is not rendered harmless simply because the party may have known that the witness would testify in some capacity. *See Karum Holdings LLC*, 895 F.3d at 952 ("we have previously rejected arguments that a Rule 26(a) violation is harmless simply because the opposing party knew the witness would testify in some capacity"). Thus, the fact that the Plaintiffs have known since October 2020 that Defendants would try to call Dr. Bilimoria does not, on its own, make the late disclosure harmless. Additionally, as to Defendants' argument that Plaintiffs took no immediate action upon receipt of Defendants' October 2020 letter, the Court finds that can be explained by the fact that at the time, the trial was set to begin in January 2021, and motions *in limine* were due in December 2020. Plaintiffs presumably intended to file a motion to bar Dr. Bilimoria by the deadline, but the trial date and associated motion deadlines were subsequently reset, and Plaintiffs were not obligated to file anything in the interim.

But the question under the second factor is whether Plaintiffs have the ability to cure any prejudice from the late disclosure. And here, it is not just that Plaintiffs have known since October 2020 that Defendants would try to call Dr. Bilimoria at trial that is significant, but also that the trial date has been reset again and there now are four months still for Plaintiffs to prepare for Dr. Bilimoria's testimony. Further, this is not a situation where the Court would need to reopen discovery or a previously unknown witness would need to be deposed, or where any additional

discovery needs to happen in order to cure the prejudice from the late disclosure. Indeed, not once in any of their briefing, either in their motion *in limine* or their response brief here, have Plaintiffs identified any additional relief, such as supplemental discovery or depositions, that they would need in order to prepare for Dr. Bilimoria's testimony at trial. Rather, Plaintiffs merely need to prepare for an examination at trial of a different expert than they had preferred and who they may not have planned to see, but whom they have already deposed and whose report they have had for almost three years. Thus, insofar as there is any prejudice, the Court finds that the four months that remain before trial provide more than adequate time for Plaintiffs to cure that prejudice and prepare to cross-examine Dr. Bilimoria at trial.

For similar reasons, the Court also finds that the third factor, the likelihood of disruption to trial, weighs in favor of Defendants. While Plaintiffs suggest that Defendants "11th hour attempt at a substitution is a blatant overreach," and "would be drastic and unnecessary," they do not point to any concrete manner in which allowing the substitution would be disruptive. [322] 7. Regardless, as the Court has explained above, Plaintiffs have sufficient time to prepare for Dr. Bilimoria at trial and requiring them to prepare for his testimony will not disrupt the trial date four months from now. Nor will it disrupt the subject matter or length of the trial, as Defendants will merely be substituting one expert for another, who will testify on the same topics. This factor thus also weights in favor of Defendants.

### 3. *Bad faith or willfulness*

As to the bad faith or willfulness in the untimely disclosure, the Court finds that this factor does weigh slightly against Defendants. While there is not enough evidence to find that Defendants acted in bad faith, the Court finds that the late disclosure was at the very least willful. Dr. Zarnke and SANI timely disclosed only one Rule 26(a)(2)(B) expert, Dr. Kokoszka, who was only designated to testify on the topic of Dr. Zarnke's conduct. They appeared ready to rely on their co-defendants RMH and Dr. Michelotti to call their own experts at trial on the issue of Dr. Michelotti's conduct right up to the eve of the January 2021 trial date in October 2020, when RMH settled. Only then did Dr. Zarnke and SANI attempt to belatedly designate Dr. Bilimoria, whose report covered both Dr. Zarnke and Dr. Michelotti, by relying on a boilerplate footnote in their disclosure. The Court has already explained that this was not the proper means for them to attempt to designate an additional expert witness.

Additionally, as Plaintiffs have noted in their briefing, Defendants' original email message in October 2020 did not clearly indicate that Defendants intended to call Dr. Bilimoria to testify as to *both* Dr. Zarnke and Dr. Michelotti. While the communication stated he would testify "pursuant to his report," which covered both doctors, it was reasonable for Plaintiffs to assume that Dr. Zarnke and SANI intended to add Dr. Bilimoria to provide additional testimony only with respect to Dr. Zarnke, given that those Defendants had previously designated only a single expert on their behalf, Dr. Kokoszka, who was to testify only as to Dr. Zarnke's conduct. It was not

until Defendants' response to Plaintiffs' motion *in limine*, filed over a year later in November 2021, that Defendants made it explicit that they intended to try and call Dr. Bilimoria for opinions related to both Dr. Zarnke and Dr. Michelotti.

The Defendants' course of conduct here in attempting to add Dr. Bilimoria on the eve of trial, and their lack of clarity with respect to the scope of his testimony, appear to have been done with the purpose of gaining a late strategic advantage. While not express bad faith, this demonstrates at the very least willful behavior and the Court thus finds this factor weighs against Defendants.

### 4. On balance, the Court finds the untimely disclosure is harmless.

Based on its consideration of all the factors, the Court holds that Defendants' discovery violation is harmless and they should be permitted to call Dr. Bilimoria.

Defendants argue that an instructive case is *Stafford v. Carter* from the Southern District of Indiana, which both parties cited in support of their respective positions in their motion *in limine* briefing. *See* 2018 WL 43616139 (S.D. IN. 2018); *see also* [297] 9-10; [301] 3. In *Stafford*, the defendants attempted to rely in their summary judgment brief on portions of testimony from a fact witness which the plaintiff argued constituted expert opinion testimony. *Id*. The plaintiff argued that because the defendants had failed to disclose the witness as an expert, they were not permitted to rely on the expert opinion testimony. *Id*. The defendants responded that they were not required to disclose the witness as an expert because a co-defendant who was previously dismissed from the case due to settlement had properly disclosed the witness. *Id*. at *1-2. The court rejected defendants' argument that Rule 26 created

an implicit "co-defendant exception" to the disclosure requirements and barred defendants from relying on the testimony. *Id.* at *2, 4-5. Defendants point out that, in reaching its ruling, the *Stafford* court commented that "when the settlement became known, Defendants could have avoided any harm by notifying Plaintiffs that they nonetheless intended to utilize the testimony of [the settled defendant's] expert witnesses." *Id*; [320] 10. Thus Defendants argue that because here they did notify Plaintiffs of their intent to utilize the testimony of the settled defendant's expert witness, they "cured any potential harm. [320] 10.

The Court finds that *Stafford* is distinguishable in some respects. First, the co-defendant settled several months *prior* to the close of discovery. *Id.* at *3. In this case, RMH settled well after the close of discovery and just before trial. At that point, as discussed above, Defendants needed to do more than merely send an email, but should have moved for formal leave to supplement their disclosure. Second, Defendants' message in October 2020 did not clearly indicate they would attempt to utilize Dr. Bilimoria for his opinions with respect to both Dr. Zarnke and Dr. Michelotti. However, while these issues support the Court's finding above that Defendants never *properly* disclosed Dr. Bilimoria, the Court agrees *Stafford* is persuasive to the extent the harm from Defendants' *improper* disclosure was lessened by their notice to Plaintiffs after RMH settled that they intended to rely on Dr. Bilimoria. In short, the October 2020 communication put Plaintiffs on notice that Defendants would attempt to rely on Dr. Bilimoria, and they should not have

25

assumed the Court would necessarily disallow him simply because his disclosure was untimely.

The Court must also acknowledge that it finds the additional extension of the trial date to September 2022 carries significant weight in balancing the applicable factors here. The Court does not approve of the manner in which Defendants have gone about their disclosure of Dr. Bilimoria and their failure to follow procedural rules. Further, the Court is mindful that just because there is sufficient time to cure any harm does not make a late disclosure harmless. But the Court is persuaded that the four months that remain until trial allow more than sufficient time for Plaintiffs and their counsel to prepare for Dr. Bilimoria's testimony, particularly in light of the fact that they have now had his report for nearly three years, and over 18 months have passed since they first were notified that Defendants would attempt to call Dr. Bilimoria at trial.

In sum, the Court finds that Defendants have met their burden to demonstrate that their discovery violation is harmless, and the Court thus holds they will be permitted to call Dr. Bilimoria at trial.

## C. Dr. Bilimoria's testimony will be limited to Dr. Zarnke's conduct.

All that remains is the scope of Dr. Bilimoria's testimony that will be permitted. In their opposition to Plaintiffs' original motion *in limine*, Defendants advanced the argument that because SANI is technically a separate defendant than Dr. Zarnke, and SANI's liability is based on a *respondeat superior* theory of liability for the conduct of both Dr. Zarnke and Dr. Michelotti as its agents, Dr. Bilimoria's

testimony would not be cumulative because his opinions covered the standard of care of both doctors. [279] 4-5. In other words, Defendants claimed that Dr. Kokoszka was to testify on behalf of Dr. Zarnke, and Dr. Bilimoria was to testify on behalf of SANI, whose liability included both doctors, therefore their testimony was not cumulative. However, this argument ignored the fact that Dr. Bilimoria's report and expert testimony was not only cumulative with respect to Dr. Kokoszka, but the aspects of his report covering Dr. Michelotti were cumulative of Dr. Michelotti's own expert. Dr. Altimari. *See Kaepplinger*, 2022 WL 267886, at *6.

In their instant motion, Defendants maintain that, since it has always been their intent to call Dr. Bilimoria for both doctors, if they are allowed to call him at trial now his testimony should encompass both Dr. Zarnke and Dr. Michelotti as reflected in his report and deposition testimony. [320] 11. However, now apparently conceding the Rule 403 problem that would present with respect to Dr. Michelotti's expert, Dr. Zarnke and SANI further state that all of defense counsel, including counsel for Dr. Michelotti, have conferred and agreed that if Dr. Bilimoria is permitted to testify as to the care of both doctors, Dr. Altimari would be withdrawn as an expert. [*Id.*] 12. Conversely, Defendants state that if the Court rules that Dr. Bilimoria cannot testify as to the allegations against Dr. Michelotti, he will testify consistent with respect to his report as to Dr. Zarnke only, and Dr. Altimari will testify as to Dr. Michelotti. [*Id.*].

Plaintiffs argue that if Dr. Bilimoria is permitted to testify, his testimony should be limited to only Dr. Zarnke because: (1) Defendants Dr. Zarnke and SANI's

timely Rule 26(a)(2) witness, Dr. Kokoszka, only offered opinions regarding Dr. Zarnke, and if Dr. Zarnke and SANI had intended to elicit testimony regarding Dr. Michelotti they should have timely disclosed those opinions; (2) Dr. Michelotti's counsel sated at the Final Pretrial Conference in December 2021 that he intended to call Dr. Altimari; and (3) while the expert reports and ultimate opinions of Dr. Bilimoria and Dr. Altimari overlap, Dr. Altimari made several admissions in his deposition testimony that weaken Defendants case, and Defendants are merely seeking to "clean up" those admissions by substituting Dr. Bilimoria. [322] 9-15.

The Court holds that Dr. Bilimoria will not be permitted to testify as to the aspect of his report covering Dr. Michelotti, and Dr. Bilimoria's testimony will be limited to his opinions concerning Dr. Zarnke's conduct. As Plaintiffs point out, Dr. Zarnke and SANI's timely disclosed expert, Dr. Kokoszka, was designated to testify regarding only Dr. Zarnke's conduct. While the Court has found that, for the reasons discussed above, Defendants will be permitted to substitute Dr. Bilimoria for Dr. Kokoszka, Dr. Bilimoria's testimony should be limited to the same subject matter as the timely disclosed witness whom he will replace. *See Kaepplinger*, 2021 WL 2633312, at *6 ("to minimize prejudice to the opposing party, 'courts generally limit the scope of the testimony that may be given by the substitute expert'") (collecting cases); *see also Medpace, Inc. v. Biothera, Inc.*, No. 1:12-cv-179, 2014 WL 1045960, at *4 (S.D. Ohio Mar. 17, 2014) ("Courts granting motions to substitute experts after the close of discovery have routinely required the new expert's testimony to be limited to the subject matter opinions espoused in the first expert's report."). This is the same

approach the Court took with Plaintiffs' motion to substitute Dr. Braveman for Dr. Nagel. *See Kaepplinger*, 2021 WL 2633312, at *6-7 ("Dr. Braveman's testimony should be limited to the same subject matter as Dr. Nagle without any meaningful changes). As the Court noted in its prior order, this is not to say the substituted expert must simply "adopt the prior experts conclusions verbatim," but simply that the testimony must be restricted to the same subject matter. *Id.* Defendants are asking to call Dr. Bilimoria in lieu of Dr. Kokoszka, so the former's testimony must be limited to the same subject matter as the latter. That subject matter is Dr. Zarnke.

As to Dr. Zarnke and SANI's cursory proposal that Dr. Bilimoria could also replace Dr. Michelotti's expert witness Dr. Altimari, whose subject matter is Dr. Michelotti, the Court finds this request wholly improper. As Dr. Zarnke and SANI have repeatedly reminded the Court, Dr. Michelotti is a separate party with his own counsel. Yet Dr. Michelotti has filed nothing indicating his position, and in fact as recently as the final pre-trial conference in December 2021 counsel for Dr. Michelotti expressly stated that he still intended to call Dr. Altimari at trial. While the Court does not doubt Dr. Zarnke and SANI's representation on Dr. Michelotti's behalf, what their proposal amounts to is essentially an additional motion to substitute Dr. Bilimoria for Dr. Altimari. It is not proper for Dr. Zarnke and SANI to shoehorn in this request to substitute a separate party's expert into their own motion to substitute Dr. Kokoszka. Dr. Michelotti never disclosed Dr. Bilimoria as an expert witness on his behalf, and has never indicated any intent to call Dr. Bilimoria as part of his case until now. If Dr. Michelotti wished to withdraw his expert, Dr. Altimari, and instead

rely on Dr. Bilimoria, Dr. Michelotti would have needed to affirmatively move to substitute Dr. Bilimoria as his expert witness just as Dr. Zarnke and SANI did with respect to Dr. Kokoszka, which would have required a showing that the substitution is harmless or substantially justified under the same factors the Court has reviewed above. But he has not done so, and Dr. Zarnke and SANI do not make any arguments as to why substituting Dr. Bilimoria for Dr. Altimari is appropriate under the Federal Rules. The Court will thus not entertain Dr. Zarnke and SANI's last minute attempt to broaden the scope of their request to include a substitution for another parties' expert, particularly when that party has never indicated anything other than his intent to call his own expert.

In sum, while Dr. Zarnke and SANI will be permitted to call Dr. Bilimoria, his testimony will be limited to the aspects of his report that deal with the same subject matter as Dr. Kokoszka's report, that being Dr. Zarnke's conduct and whether he met the appropriate standard of care.

## Conclusion

For all the foregoing reasons, Defendants' Dr. Zarnke and SANI's motion for leave to call Dr. Bilimoria in lieu of Dr. Kokoszka is granted. Dr. Bilimoria's testimony will be limited to Dr. Zarnke's conduct and whether he met the appropriate standard of care.

_____

**HEATHER K. McSHAIN**
**United States Magistrate Judge**

**DATE: May 4, 2022**